**UNITED STATES of America, Plaintiff,**

v.

**Robert Lee KUHL, Defendant.**

**Civ. No. 91–1828–R.**
**Crim. No. 90–1088–R.**

United States District Court,
S.D. California.

March 2, 1993.

---

Robert Kuhl, in pro per.

Michael Wheat, Asst. U.S. Atty., San Diego, CA, for U.S.

### ORDER DENYING MOTION
### UNDER 28 U.S.C. § 2255

RHOADES, District Judge.

Petitioner has moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. In the underlying action, Petitioner pleaded guilty to three counts of a seven count bank robbery indictment. Petitioner entered into a plea agreement with the government and was sentenced to forty-six months in the custody of the Bureau of Prisons. Petitioner now claims that his sentence was based on an incorrect application of the sentencing guidelines.

*Background*

On November 7, 1990, a federal grand jury returned a seven-count indictment charging Petitioner, Robert Lee Kuhl, with bank robbery in violation of 18 U.S.C. § 2113(a). Petitioner pleaded guilty to three counts of the seven count indictment on January 22, 1991, and entered into a plea agreement with Respondent United States of America. The text of the agreement is only known through the transcripts from the January 22, 1991, disposition hearing and the April 8, 1991, sentencing hearing.[1]

At the disposition hearing, Petitioner's counsel made the following statement:

> Mr. Cohen: Your Honor, the Government has agreed that at the time of sentencing in this case, in exchange for Mr. Kuhl's plea to counts 3, 5 and 7 of the indictment, that the Government will dismiss with prejudice all remaining counts of the indictment. In addition to that, the Government has agreed to recommend no more than the mid-range of the guidelines in this case. In addition to that, the Government has agreed not to object to the defendant's request for self-surrender to the institution designated by the Bureau of Prisons. And the defendant agrees that if the sentence in this case is within the guideline range, then he will waive appeal.

RT–I at 5–6.[2] At the sentencing hearing, the parties agreed to a sentence of forty-six months:

> The Court: All right. Read the stipulation.
>
> Mr. Cohen: The stipulation is, your honor, that the defendant did not carry a gun during the robbery charged in count 3 of the indictment as the probation report indicates and that there should be a two point upward departure because it was a robbery of a financial institution, and that was not taken into account by the old guidelines … and both parties are going to recommend forty-six months in custody,

which is the low end of the current guideline range as calculated by probation.

RT–II at 3–4.[3] On the issue of appeal, the following conversation occurred:

> The Court: You are advised that you have a right of appeal from this sentence. Or did you waive that right of appeal?
>
> Mr. Wheat [for USA]: Did he waive it?
>
> Mr. Cohen: Yes, it is waived, your honor.
>
> The Court: He has waived it?
>
> Mr. Cohen: Yes, your honor.

RT–II at 11. While it would be preferable to have the agreement in writing, the form of the agreement as preserved in the record is the only form available.

The guideline analysis that was presented to this Court yielded an offense level of twenty-two, the corresponding sentence being forty-one to fifty-one months. Petitioner now argues that the two-level increase for crimes involving a financial institution, imposed under Section 2B3.1(b)(1), was applied erroneously. Petitioner contends that the guideline amendment cannot apply to his sentence because that amendment was not implemented until after he had committed his crimes. The sentence range for an offense level of twenty under the guidelines in place at the time was thirty-one to forty-one months. Petitioner asks for a reduction of his sentence to thirty-three months.

In addition to the complicated question of whether Petitioner, in waiving his right to appeal his sentence, also waived his right to challenge his sentence collaterally through a writ of habeas corpus, this Court must address (1) whether parties may use a plea agreement to "contract" for a sentence that is not within the applicable guideline range, and (2) the effect of an error in a guideline sentence calculation.

---

1. This Court ordered the government to produce a copy of the plea agreement if any exists. Order of 12/18/92. Respondent replied that it was unable to locate a written copy. Respondent's reply to request for supplemental briefing, 12/31/92.

2. "RT–I" refers to reporter's transcript of the hearings on January 22, 1991.

3. "RT–II" refers to the reporter's transcript of hearings on April 8, 1991.

*Discussion*

## I. Was the Sentence Improper?

### A. *The Applicable Guideline Range was Thirty-three to Forty-one Months*

■ Generally, when a sentencing court imposes a sentence, the sentence must be within the applicable guideline range:

> The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

18 U.S.C. § 3553(b).

To determine the guidelines that are applicable to a defendant's sentence, the sentencing court must use the Guidelines Manual in effect on the date that the defendant is sentenced. United States Sentencing Commission, *Guidelines Manual*, § 1B1.11(a) (Nov. 1992). "If the court determines that use of the Manual would violate the *ex post facto* clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." *Id.* § 1B1.11(b)(1). Also, as the Commentary to Section 1B1.11 notes, "courts to date generally have held that the *ex post facto* clause does apply to sentencing guideline amendments that subject the defendant to increased punishment." U.S.S.G. § 1B1.11(b)(1), p.s.

In the instant case, Petitioner committed the bank robberies in July and August 1989. The two level increase at issue here is found in Section 2B3.1(b)(1) which states, "If the property of a financial institution or post office was taken, or if the taking of such property was an object of the offense, increase by two levels." This amendment was effective November 1, 1989. By following the agreement between Petitioner and the government, and the representations proffered by the Petitioner, the government, and

probation, this Court erred in its application of the two level increase: Petitioner's crimes had been committed before the guideline amendment and the imposition of a greater sentence violates the *ex post facto* clause.

The range that was considered by this Court, as proposed by the parties in the plea agreement, and as endorsed by probation, was forty-one to fifty-one months for a level of twenty-two. By removing the questionable two level increase, Petitioner would have been sentenced at a level of twenty, the applicable range being thirty-three to forty-one months. Since this Court finds that the sentence of forty-six months is outside the applicable guideline range, I must seek either a justification for the increase or decide what remedy, if any, is available to Petitioner.

### B. *The Court Gave No Explanation for Departure*

■ A sentence exceeding the guideline range may not be imposed without a finding by the court announced in open court. 18 U.S.C. § 3553(c). This Court made no such finding. The only indication that this Court believed the sentence was low for the offenses committed occurred at the sentencing hearing:

> The Court: Okay. I will tell you what is going through my mind and you can tell me why my thoughts may be in error. Forty six months seems kind of light for three bank robberies. Of course, I realize we are in the world of the guidelines and they think it is Okay.

RT–II at 6. While this Court expressed concern at the suggested sentence of forty six months, there was no express finding to justify even that sentence, which this Court now acknowledges was not within the guideline range. No aggravating circumstances were presented and no uncharged offenses prompted an upward departure. Simple error on the part of all parties involved yielded a sentence that was greater than that mandated by the guidelines.[4]

---

4. Here, in spite of the best efforts and recommendations by experienced probation officers and counsel, all parties came up with the wrong

result. The often confusing amendments to the guidelines have created the situation at issue here. Judge Kozinski's concerns expressed in

Based on the erroneous application of the sentencing guidelines, an inappropriate guideline was used to determine Petitioner's sentence. As the legal analysis will demonstrate, however, no remedy is available to this Court to reverse the sentence because Petitioner entered into an agreement with the government and waived his right to appeal.

### C. Contract Law Does Not Permit This Court to Reform the Plea Agreement

#### 1. Contract Law Applies to Plea Agreement Enforcement

■ Plea bargains are contractual in nature and are therefore measured by contract law. "[T]he negotiated plea represents a bargained-for quid pro quo." United States

v. Escamilla, 975 F.2d 568, 571 (9th Cir. 1992). A plea agreement clause waiving a defendant's right to appeal is a bargained for element of the agreement. United States v. Gonzalez, 981 F.2d 1037 (9th Cir.1992) (Kozinski dissenting). Under a plea agreement, a defendant receives the benefit of a favorable sentence that he otherwise might not have received. The government, in turn, receives the benefit of efficiently disposing of the case. Courts have consistently held that plea agreements waiving defendants' rights to appeal are valid and enforceable. See United States v. Bolinger, 940 F.2d 478, 480 (9th Cir.1991); United States v. Navarro-Botello, 912 F.2d 318, 321–22 (9th Cir.1990), cert. denied, —— U.S. ——, 112 S.Ct. 1488, 117 L.Ed.2d 629 (1992).

another setting are equally applicable in the realm of the guidelines: "By continually shifting the target at which we ask [judges] to aim, we no doubt make it harder for them to hit it." Fair v. Bowen, 885 F.2d 597, 602 n. 3 (9th Cir.1989).

In his book The Price of Perfect Justice, Judge Macklin Fleming made the following observations:

The fuel that powers the modern theoretical legal engine is the ideal of perfectibility—the concept that with the expenditure of sufficient time, patience, energy, and money it is possible eventually to achieve perfect justice in all legal process.... Yet a look at almost any specific area of the judicial process will disclose that the noble ideal has consistently spawned results that can only be described as pandemoniac.... Why, we ask ourselves, have such diligent attempts to create a perfect legal order fared so poorly in practice? ... The answer, perhaps, may be found in the reason given by Macaulay for the failure of ambitious governments: the government that attempts more than it ought ends up doing less than it should.

Macklin Fleming, The Price of Perfect Justice 3 (1974), citing Thomas Babington Macaulay, Critical and Historical Essays 335 (1890).

After sentencing several hundred defendants under the sentencing guidelines and after diligent, repeated, and thoughtful study of the Manual, I am afraid that the government, in the hope that disparity would be eliminated, has attempted more than it ought and has ended up doing less than it should.

Since the adoption of the sentencing guidelines, considerable thought, effort, scholarly comment, and judicial interpretation have been directed toward making the guidelines more workable, understandable, and harmonious with congressional intent. The fruits of this great effort include the unfortunate result in the instant case.

Anyone who believes that the guidelines are any more comprehensible than the Internal Rev-

enue Code should review, as an example, the recent amendment to Guidelines § 1B1.3 regarding relevant conduct. After reviewing page after page of amendments, examples, and references to other sections, one will be left with the distinct impression that confusion reigns and further amendments are on the way. One would conclude that the best efforts of the experts in the field would be insufficient to bring order out of chaos.

After toiling to comprehend the guideline morass, one might ask, "What should be done?" Many thoughtful observers have reached the same conclusion that conductor George Szell did, when asked what might be done to fix the troublesome acoustics at Avery Fisher Hall. Mr. Szell offered a specific remedy: "Tear it down and start all over." Hubert Saal, "Brave New Hall," Newsweek, Nov. 1, 1979 at 59.

Although guidelines cognoscenti recognize that any chance of the guidelines being abolished is nil, continued tinkering, amending, and adjusting will not make the guidelines understandable or workable, nor will the envisioned goals be any more achievable.

As pointed out by the Greek philosopher Zeno, "Before a body in motion can reach a given point, it must first traverse the half of the distance; before it can traverse the half, it must traverse the quarter; and so on, ad infinitum.... Consequently, the goal can never be reached." See Zeller, Die Philosophie d. Griechen 54 (1876).

And so it is in trying to find perfection in the guidelines. It cannot be done. In the meantime, confusion governs what the trial judges do, time is wasted, and, above all, justice has been replaced with the slide rule—an unfortunate state of affairs.

Just as painting by the numbers is not art, sentencing by the numbers is not justice. Lamentably, this case is paradigmatic of what the guidelines have done and are doing to the criminal justice system.

This Court must now determine what happens when parties use a plea agreement to contract for a sentence that is not within the applicable sentencing guideline range. This court recognizes that all parties involved in the plea negotiations made a mistake. The Section 2B3.1(b)(1) amendment providing a two-point increase to crimes involving a financial institution became effective after Petitioner's offense and, had the Court and the parties been aware, the amendment would not have been applied. The government has upheld its part of the bargain in recommending a sentence consistent with the plea agreement. The agreement, however, was partially based on inapplicable guidelines.

## 2. Mistake not Reformable

■ This Court applies general principles of contract law to determine what remedies, if any, are available to Petitioner. In general a contract may be rescinded if both parties mistakenly assume a material fact. A mistake as to a collateral matter does not justify rescission. *Williston On Contracts* § 1544, at 94 (3d ed. 1970). A court may exercise its equitable power of reformation where a mistake is common to both parties and, by reason of the mistake, each party has done what neither intended. *Id.* at 9.

It is always a difficult task to attempt to determine what the parties understood the intent of the agreement to be. This case is no exception. Here, for example, the parties may have intended that Petitioner receive a mid-range sentence. *See* RT at 9. Petitioner's sentence of forty-six months is consistent with the "mid-range" intent since forty-six months is the mid-range of what was mistakenly believed to be the proper sentencing range.

Alternatively, it is also possible that the parties intended that the sentence imposed be a "light" sentence. This Court indicated at the sentencing hearing that forty-six months was a "light" sentence for the offenses, although the Court followed the recommendation as consistent with the Federal Sentencing Guidelines. RT–II at 6. Also, the fact that the government dismissed four of the seven bank robbery counts, in exchange for Petitioner's plea of guilty to the three remaining counts, indicates that the

parties' intention might have been a bargained-for exchange, involving the Petitioner receiving a "light" sentence.

This Court finds no clear indication of the parties' intent when entering the plea agreement. It would be incorrect to say that, as a result of a mistake, each party has done what neither intended. It is quite likely that both parties did what they both intended. This Court refuses to exercise its equitable power of reformation to "correct" the mistake.

## 3. Reformation for Mistake Inapplicable to Plea Agreements

■ While there is not much law on the subject, courts deciding issues of mistake in interpreting plea agreements have not changed the underlying sentences based on error. For example, in *United States v. Bos*, 917 F.2d 1178 (9th Cir.1990), the court upheld the use of the sentencing guidelines for arson where the defendant pleaded guilty to mail fraud. The court held that "even if both parties had assumed the mail fraud guidelines would be applied, such a mutual mistake of law is not grounds for invalidating the plea bargain." *Id.* at 1182.

In *United States v. Atkinson*, 979 F.2d 1219, 1223 (7th Cir.1992), a case decided on appeal, the parties partially based a plea agreement on an erroneous criminal history category, classifying the defendant as a career offender. Based on the mutual mistake, the government sought to reform the plea agreement to reflect the proper, lower criminal history category. The court held "that while a contract may be reformed for a mutual mistake, this remedy is appropriate only when the contract fails to reflect accurately the terms of the agreement." *Id.* at 1223. The *Atkinson* court rejected the mutual mistake approach to reformation. "We cannot accept the government's suggestion that we reform the plea agreement on the basis that the parties made a mutual mistake about its premises." *Id.* at 1223.

The *Atkinson* court also noted that "many courts . . . have recognized that the contract law analogy has limits in [the plea] context and reformation seems to be one of them." *Id.* at 1223 (citing *Carnine v. United States*, 974 F.2d 924, 928 (7th Cir.1992) (noting that

plea agreements are "unique contracts")); *United States v. Olesen*, 920 F.2d 538 (8th Cir.1990) (reversing the district court's reformation of a plea agreement).

After rejecting the mutual mistake argument, the *Atkinson* court found the imposed sentence erroneous, and remanded the case to the district court for resentencing. For this Court's analysis, it is important that the mutual mistake approach was rejected. Because the Ninth Circuit has no ruling on this issue, I follow the persuasive argument of the Seventh Circuit and reject the mistake argument as well.

## II. Available Remedies

Several remedies are available to a defendant who believes his sentence was imposed in error. For the reasons explained below, however, none of the remedies is available to Petitioner. Consequently, this Court must deny Petitioner's motion to correct his sentence pursuant to 28 U.S.C. 2255.

### A. *Appeal*

■ Another remedy to a defendant whose sentence was improperly imposed is appeal. A defendant may appeal an otherwise final sentence if the sentence

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines; or

(3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervised release than the maximum established in the guideline range, ...

18 U.S.C. § 3742(a). The sentence at issue here clearly falls within Section 3742(a)(2) because an incorrect guideline range was applied. However, Petitioner waived his right to appeal pursuant to a plea agreement with the government.

Waivers of appeal are permissible and serve important policy concerns. *Navarro–Botello, supra.* The *Navarro–Botello* Court noted that the "Supreme Court has found that knowing and voluntary constitutional waivers do not violate due process." *Id.* at 321 (citing *Town of Newton v. Rumery*, 480

U.S. 386, 393, 107 S.Ct. 1187, 1192, 94 L.Ed.2d 405 (1987)). The Court also held that it is not a violation of due process for a defendant to waive, in an otherwise valid plea agreement, the statutory right of appeal. *United States v. Navarro–Botello*, 912 F.2d at 321.

In this case, the record shows that the Petitioner intelligently and voluntarily waived his right to appeal. *See* RT–II at 11. Petitioner was therefore unable to raise his arguments on direct appeal.

In a case similar to the instant case, the Ninth Circuit upheld the defendant's waiver of appeal, despite the fact that the sentence imposed was greater than that mandated. *United States v. Bolinger*, 940 F.2d 478. The *Bolinger* court stated, "Because we enforce Bolinger's waiver of his right to appeal the sentence, we do not consider his underlying claims that the district court misapplied the guidelines." *Id.* at 480. If a defendant has waived the right to appeal, a defendant has waived the right to challenge improper application of the sentencing guidelines on appeal.

The *Bolinger* court also noted that a waiver of the right to appeal would not prevent an appeal where the sentence imposed is not in accordance with the negotiated settlement. *Id.* This exception is not applicable here. The court-imposed sentence was within the negotiated settlement. Petitioner was thus unable to appeal his sentence since he knowingly and intelligently waived his right to appeal.

The Sixth Circuit addressed a similar issue in which the sentencing judge departed upward without giving sufficient findings of aggravating circumstances. *United States v. Newsome*, 894 F.2d 852 (6th Cir.1990). In *Newsome*, the defendant entered into a plea agreement with the government that set a sentencing cap at 57 months. This cap was agreed to because of defense counsel's miscalculation of the guideline range. *Id.* at 854. At the sentencing hearing, the probation officer who prepared the presentence report determined that the range was only 33–41 months. "No one challenged the probation officer's 33–41 month calculation, and the

district court appears to have accepted it as correct." *Id.*

Newsome's sentencing judge acknowledged the correct sentencing range and intentionally sentenced Newsome to 57 months, a punishment outside the applicable guideline range but within the plea agreement cap. On appeal, the court found that "defendant's miscalculation of the guidelines could hardly constitute . . . an aggravating circumstance, and neither could the defendant's desire to insure that in no event would he spend more than four years and nine months in prison." *Id.* at 856.

While *Newsome* appears to be directly on point, there are several differences that make the analysis less useful to this Court. First, Newsome did not waive his statutory right to appeal his sentence pursuant to a plea agreements as did Petitioner here. If he had, the Sixth Circuit might not have addressed the issue at all. Second, Newsome's sentencing judge was aware of the actual guideline range and intentionally decided to impose a higher sentence. Here, this Court was unaware of the correct guideline range, so there was no intentional departure.[5] For purposes of this motion, this Court presumes that the imposed sentence was incorrect. The remaining issue is if Petitioner, having waived his right to appeal, may challenge his sentence in another way.

### B. *Federal Rule of Criminal Procedure 35(c)*

This Rule provides a defendant with a remedy for an incorrect sentence. According to this rule, "The court, acting within seven days after the imposition of sentence, may correct a sentence that was imposed as a result of arithmetical, technical, or other clear error." Fed.R.Crim.P. 35(c). While this rule would ordinarily help a defendant whose sentence was improperly imposed, the error was not brought to this Court's attention during the seven days after sentencing. This remedy is thus unavailable to petitioner.

### C. *Rule 36 Motion*

■ "Errors in naming the rule or statute under which a defendant is proceeding should not be held against him, and . . . if relief is available under any of these procedures it ought to be given." Charles Wright, 3 *Federal Practice and Procedure: Criminal 2d* § 583 at 392–93 (1982). Here, this Court could conceivably bring its own motion under Fed.R.Crim.P. 36 to correct an error in the sentencing.

Rule 36 is similarly unavailing. Although the rule permits correction of clerical mistakes in the record "arising from oversight or omission," the Ninth Circuit has held that the provisions of Rule 36 "do not permit a substantive change in the period of incarceration that the defendant must serve. A change made under Fed.R.Crim.P. 36 can do no more than conform the sentence to the term which the record indicates was intended." *United States v. Kaye*, 739 F.2d 488, 490 (9th Cir.1984). Petitioner has no remedy under this rule.

### D. *Section 3582(b)(2)*

Under 18. U.S.C. § 3582(b)(2), a person sentenced may move to have a sentence reduced or modified if the guidelines have subsequently been amended and if the reduction is consistent with applicable policy statements issued by the sentencing commission. *See also* 18 U.S.C. § 3582(c). Section 3582(b) and (c) are unavailing here, too, since the sentencing guidelines were not amended after the imposition of Petitioner's sentence and thus a modification would not be consistent with an applicable policy statement. *See* Guidelines § 1B1.10(d). Petitioner has no remedy under §§ 3582(b) or (c).

### E. *Collateral Attack*
#### 1. Applicability of 28 U.S.C. § 2255

The Advisory Committee notes to Fed.R.Crim.P. 35(c) state that Rule 35(c) provides "an efficient and prompt method for correcting obvious technical errors that are called to the court's attention immediately after sentencing. . . . The Committee's assumption is

---

5. In fact, this Court was told by counsel for Petitioner, by probation, and by the government

that the sentence imposed was correct as calculated under the guidelines.

that a defendant detained pursuant to such a sentence could seek relief under 28 U.S.C. § 2255 if the seven day period provided in Rule 35(c) has elapsed." Petitioner seeks relief under Section 2255.

### 2. Effect of waiver on ability to raise collateral attack

Respondent argues that Petitioner's waiver of his right to appeal his sentence is binding on his right to seek collateral review under Section 2255. This is an unsettled area of the law.

#### a. *Abarca: The Ninth Circuit Clarifies the Law*

The Ninth Circuit has provided a recent clarification of this issue in *United States v. Abarca*, 985 F.2d 1012 (9th Cir.) (filed Feb. 5, 1993). In *Abarca*, petitioner waived his right to appeal when he entered into a plea agreement with the government. Petitioner later brought a challenge under § 2255 seeking to reduce his sentence because he had discovered new exculpatory evidence. The Ninth Circuit rejected the petitioner's argument:

> Like the right to bring a direct appeal of his sentence, the right Abarca seeks to exercise in bringing a collateral attack is statutory. A knowing and voluntary waiver of a statutory right is enforceable. While we do not hold that Abarca's waiver categorically forecloses him from bringing any section 2255 proceeding, such as a claim of ineffective assistance of counsel or involuntariness of waiver, the question of the degree of his culpability is an issue clearly contemplated by, and subject to, his plea agreement waiver.

*Id.* The Ninth Circuit has thus held that a waiver of the right to appeal also waives the right to raise a collateral challenge under § 2255 in most circumstances.

#### b. *The Law Remains Unsettled*

The recent Ninth Circuit opinion does not, however, extend to the facts of the instant case. On the subject of appeal from a mistake in sentencing, there is scant law available. At least two opinions have indicated that a Section 2255 petition might be available to an improperly sentenced defen-

dant who has waived his right to appeal. In *United States v. Rutan*, 956 F.2d 827, 829 (8th Cir.1992), the court noted that "an illegal sentence can still be challenged under 28 U.S.C. § 2255 for habeas corpus relief, so a defendant is not entirely without recourse from an erroneous sentence."

Similarly, in a recent dissenting opinion, Judge Kozinski explored the alternatives available to a defendant who had waived his right to appeal. *United States v. Gonzalez*, 981 F.2d 1037. Judge Kozinski disagreed with the *Gonzalez* court's decision permitting a merits panel to decide whether an appeal could be taken where defendant had waived his right to appeal:

> In all other cases, if that plea bargain contains a no-appeal clause, I would dismiss the appeal. An alternative approach might be to remand automatically.... Or we might rule that defendants who have given up their right to appeal may challenge the validity of the plea agreement (including the government's compliance therewith) only by way of collateral attack, as we have done for claims of ineffective assistance of counsel.

*Id.* at 1043. Judge Kozinski thus suggests that a collateral attack might be permissible. The lack of jurisprudence on this issue, leads this Court to believe that the issue of waiver of appeal on a defendant's right to attack a mistake in sentencing *collaterally* is unsettled in this circuit.

As a first step, this Court distinguishes the facts in *Rutan* and *Gonzalez*. The *Rutan* court merely noted that a petitioner who has waived his right to appeal may still collaterally challenge an illegal sentence. In the instant case, the challenged sentence was the specific sentence agreed to by all parties involved. *Rutan* is therefore inapplicable.

Similarly, Judge Kozinski's *Gonzalez* dissent does not address the facts as presented here. In *Gonzalez*, Judge Kozinski merely suggests a possible remedy that could be made available to petitioners who have waived their right to appeal. First, there is no indication that Judge Kozinski, the lone dissenter in *Gonzalez*, would apply his conjecture to the instant facts. Second, the

holding in *Abarca* may have settled the area of law raised in Judge Kozinski's dissent. Finally, given the important policy concerning waiver of the right to appeal, it would be improper to extend § 2255 protection to anything other than a charge of ineffective assistance of counsel or involuntariness of waiver.

Petitioner here permissibly waived his statutory right to appeal when he knowingly and voluntarily entered into the plea agreement with the government. The sentence imposed on Petitioner was in accordance with the negotiated agreement. *Navarro–Botello,* 912 F.2d at 321. Petitioner should not be permitted to raise this issue collaterally.

### c. Public Policy Concerns

■ Compelling issues of public policy strongly support the use of plea agreements. "Plea agreements are an important—indeed essential—component of our criminal justice system [providing] substantial benefits to the government, to our courts, to the public, and to criminal defendants." *See United States v. Gonzalez,* 981 F.2d at 1040 (Kozinski dissenting); *Navarro–Botello,* 912 F.2d at 321. Plea bargains are important to save the government money and time, which is a benefit to the public as well. *Rumery* 480 U.S. at 393, n. 3, 107 S.Ct. at 1192, n. 3.

If valid plea agreements which include a waiver of the right to appeal are not enforced, the government will be reluctant to negotiate such agreements. Decreased incentives will remain for the government to enter into a plea agreement. The detrimental result would be an even more crowded criminal docket.

Finally, and perhaps most importantly, a weighty benefit of plea bargaining is the finality that results from such agreements. *Navarro–Botello,* 912 F.2d at 322. Without finality, most benefits of a plea agreement are lost. By permitting collateral attacks by defendants who have waived the right to appeal, this Court would open the floodgates to relitigation of all issues. There would be no finality.

Petitioner here waived his right to appeal in exchange for a promise from the government to dismiss four counts of a seven count bank robbery indictment. Dismissal of the four counts was a substantial benefit to Petitioner. Petitioner may not now ignore his part of the bargain.

### d. Ex Post Facto Issue

Petitioner's collateral attack is based on the *ex post facto* clause. The Ninth Circuit has consistently recognized that where guideline amendments are *ex post facto,* use of the earlier guideline applies. *See United States v. Castro,* 972 F.2d 1107, 1112 (9th Cir.1992), *cert. denied —— U.S. ——,* 113 S.Ct. 1350, 122 L.Ed.2d 731 (1993) (remanding for resentencing under guidelines in effect at the time of the offense so as not to violate *ex post facto* clause). There is no question in this case that by virtue of the *ex post facto* clause, U.S. Const. art I, § 9, cl. 3, Petitioner's offense level was determined under the wrong guidelines. And, had Petitioner not waived his right to appeal, such error could have been corrected by appeal or by collateral attack. But this is not the case here.

This court holds that Petitioner has waived his right to a collateral attack when he knowingly and voluntarily waived his right to appeal.

### III.   Conclusion

This Court acknowledges that an error was committed at Petitioner's sentencing hearing. All parties involved—the Defendant, the government, probation, and this Court—believed that the proper guidelines were being used. I have since undertaken extensive research into the issues discussed above and have even explored all possible remedies, many of which were not presented by Petitioner. Each avenue of relief has resulted in a deadend.

Since Petitioner waived his right to appeal, he reduced his options for relief. Because Petitioner waited eight months to bring his motion, other options were foreclosed. Now, Petitioner may not challenge the sentence to which he agreed under an agreement to which he was a party.

Petitioner's motion is DENIED.

IT IS SO ORDERED.