**UNITED STATES of America, Plaintiff,**

v.

**Christine WAINUSKIS, Defendant.**

**Civil Action No. 2:96–CV–226PG.**
**Criminal No. 2:94–CR–002PR.**

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

Oct. 10, 1996.

Victoria May, U.S. Attorney's Office, Jackson, MS, for U.S.

Christine Wainuskis, Tallahassee, FL, pro se.

## MEMORANDUM OPINION

PICKERING, District Judge.

This matter is before the Court on motion of the Defendant, Christine Wainuskis, to vacate, set aside, or correct sentence by a person in federal custody pursuant to Title 28, U.S.Code § 2255. Defendant seeks to set aside her May 17, 1995, judgment of conviction for violation of 18 U.S.C. § 924(c) for "carrying" or "using" a firearm during a drug trafficking crime.

Defendant was indicted on four counts. In the first count Defendant was charged with conspiracy to possess with intent to distribute methamphetamine over a two year period from August 1991 until July 29, 1993. In the second count, Defendant was charged with possession with intent to distribute methamphetamine. Count III charged that Defendant did knowingly "use and carry" a firearm during and in relation to a drug trafficking crime. In the fourth count Defendant was charged with being a felon in possession of a firearm.

Defendant entered into a Memorandum of Understanding with the Government in which the Defendant agreed to plead guilty to Counts III and IV and the Government agreed to dismiss Counts I and II. Defendant entered her plea of guilty as to Counts III and IV and the Government in exchange moved to dismiss and the Court dismissed Counts I and II. Because of her plea bargain and a downward departure, Wainuskis received a sentence of ninety months, less than one-half the *minimum* sentence which she would have received under the guidelines if she were held fully accountable for all of the criminal conduct which she admitted. By this motion Wainuskis seeks to reduce her total prison sentence to thirty months.

This matter was referred to a Magistrate Judge for report and recommendation. The Magistrate Judge concluded that under *Bailey v. United States,* — U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), the record did not establish a factual basis for a conviction under 18 U.S.C. § 924(c). The Government objected to the Report and Recommendation of the Magistrate Judge arguing that although under *Bailey* the facts established in the record might not support a conviction and sentence for "use" of a firearm under § 924(c) that the facts established by the record did support a conviction and sentence

under the "carry" prong of § 924(c). This Court gave notice that it had concluded that the sentence should be vacated but was uncertain as to what the Court should do in regard to resentencing Defendant and requested more briefing from both parties. Since giving that notice to the parties, the Court has spent a considerable amount of time on this case and has concluded that it was in error when it indicated that it agreed that the sentence of May 9, 1995, should be set aside and vacated.

In order to appropriately decide this case it is necessary to take a detailed look at all of the facts and circumstances. The record establishes the following: When Defendant Wainuskis entered her plea, the attorney for the government was asked to relate what the government would be able to prove if Wainuskis should go to trial. He related that on July 29, 1993, a search warrant was executed at the home of Wainuskis and co-defendant Materne. That officers found the two defendants at their residence along with several grams of methamphetamine, bagging scales and other items associated with packaging and distributing methamphetamine. Counsel for the government indicated that the government would prove that the defendants intended to distribute the methamphetamine found in their home and that there were loaded pistols within arm's reach of both defendants and that as to Wainuskis she was lying on a bed and a pistol "was underneath a mattress within arm's reach." He related that the defendants admitted that they had constructive possession of these weapons, that the weapons belonged to the defendants, that the weapons were there for the defendants to use, and that the *defendants possessed these guns to "protect their methamphetamine."* (emphasis added). When Wainuskis was asked if she agreed with everything or disagreed with anything that the attorney for the government had related, she stated that she agreed with everything that the attorney for the government had said and disagreed with nothing that he had said and that she was in fact "guilty of Counts 3 and 4." She further admitted that she was selling drugs and when asked if she and her co-defendant were "drug trafficking" her response was "well, having drugs with the guns."

The Presentence Investigation Report prepared at the request of the Court and reviewed by the Court before sentencing and before entry of the Judgment Of Conviction In A Criminal Case reveals that Defendant, Christine Wainuskis, and her mother, Marion Wainuskis, had come to the attention of law enforcement officials in early 1993 and that thereafter there had been numerous trash searches of the residence of defendant and her mother. These searches revealed numerous "wire transfer receipts; numerous labels and boxes for fire arm accessories; numerous used hypodermic syringes, some of which tested positive for methamphetamine; several duct tape packages, some of which (sic) a narcotic dog alerted, indicating the presence of a controlled substance residue; telephone numbers and names and numerous other items which indicated that Christine Wainuskis and Joseph Materne were operating a methamphetamine distribution organization." Further, on February 2, 1993, agents received a federal court order authorizing the use of a dialed number recorder (pen register) as to calls made to and from the telephone at defendant's home. This recording indicated that there were numerous calls made from this telephone to known drug traffickers. An inmate at the FCI at Talladega indicated that Christine Wainuskis and her mother sold to that informant and his partner "from several ounces to one to two pounds" of methamphetamine monthly during 1991 and 1992. "Information relating to Christine Wainuskis and Materne's methamphetamine distribution and their possession of numerous firearms (ranging from .38 caliber revolvers to MAC–11 9 mm pistols, as well as large caliber rifles and shotguns) also resulted from the debriefing of numerous CIs."

The Presentence Investigation Report further reveals that the methamphetamine found at Wainuskis' and Materne's residence the night that they were arrested weighed 92.3 grams and that they *had a total of 27 weapons, including semi-automatic assault pistols, semi-automatic assault rifles and shotguns.* Additionally, officers executing

the search warrant found "numerous small bags, vials, cutting agent, numerous sets of digital scales, radio scanners, an electronic listening device, a facsimile machine, a computer, several electronic pocket diaries/phone books and various types of ammunition." On the same night that defendant's house was searched, other homes were searched in connection with the investigation of Defendant and Materne. 572.6 grams of methamphetamine was found at another residence attributable to Materne and Wainuskis. "Although controlled substances were seized from two additional residences, it [was] not clear whether the drugs were supplied by Materne and Wainuskis." Thus the writer of the Presentence Investigation Report did not attribute to Wainuskis any drugs as to which there was not a direct link. Consequently, on the night of the arrest, "664.9 grams of methamphetamine attributable to Materne and Wainuskis" were seized.

In regard to some of the firearms that were found at the residence of Wainuskis and Materne on the night of their arrest, the Pre–Sentence Investigation Report reveals

During an initial frisk of Materne, an ATF agent discovered a black nylon holster in Materne's waistband. A loaded magazine for a Ruger T–85 .40 caliber pistol was found in Materne's rear pocket. Additionally, the *agent observed* Materne was within arm's reach of a Ruger, Model P91 DC, .40 caliber *semi-automatic pistol located on a bar stool* in the kitchen area. Further, the *agent observed a Cobray,* SWD, Model MAC–11, 9 mm assault pistol which was loaded and within arm's reach of Materne.... As the search continued, Wainuskis was observed lying in a bed in a rear bedroom. An agent located a loaded Colt, Mark V, Series 80, .380 caliber semi-automatic pistol in a black nylon holster lying in the edge of the mattress between the mattress and the nightstand.

"Wainuskis acknowledged that *she and Materne began purchasing guns to protect themselves because of their drug dealing. She stated the guns were used for drug trafficking....*" (emphasis added). Wainuskis was questioned about an arrest in California wherein she was charged with possession of methamphetamine in March of 1992. She related that as a result of the California arrest she stopped selling drugs from March 1992 until October of 1992 when she again started selling drugs.

When Wainuskis was arrested in March of 1992 in Ontario, California, in a hotel room at the Howard Johnson Motor Lodge, officers discovered $2,225.00 in cash. Wainuskis also received a Federal Express package at the hotel while officers were present. They had Wainuskis open the package. It contained an additional $3,000.00. At the time of their arrest in the instant case, officers discovered $3,442.00 in cash on Materne.

There are three clear distinctions between this case and *Bailey, supra.* The major distinction is the factual difference. A second, and also important distinction is that Wainuskis pled guilty and Bailey was convicted by a jury. Third, *Bailey* involved a direct appeal and this case involves a collateral attack under § 2255.

*Bailey* actually involved two cases, Bailey and Robinson. In the *Bailey* case after Bailey was arrested, the officers searched *the trunk of his car* and found among other things "a bag containing a loaded 9–mm. pistol." In the Robinson case, *"Inside a locked trunk in the bedroom closet the police found,* among other things, *an unloaded, holstered .22–caliber derringer ..."* — U.S. at ——, 116 S.Ct. at 504, 133 L.Ed.2d at 477– 478. (emphasis added). In *Bailey* the Supreme Court found that there was not sufficient evidence to establish "use" of a firearm and the case was remanded to the Circuit Court because the Circuit Court had not considered the "carry" prong of § 924(c)(1). The Circuit Court remanded the *Bailey* case to the District Court for "further proceedings" consistent with the Supreme Court mandate. 1996 Westlaw 103727 (D.C.Cir., 1996) (not reported in F.3d). As to Robinson, the Court found that there was insufficient evidence to establish that Robinson either "carried" or "used" a gun in connection with a drug trafficking crime. Consequently, on appeal, Robinson's conviction on that count was vacated. Robinson, as was Bailey, was convicted by a jury and did not plead guilty as did Wainuskis. As indicated both

*Bailey* and *Robinson* were direct appeals and not collateral attacks as is the situation in this case.

The record in this case clearly establishes that Wainuskis and her mother and subsequently Wainuskis and Materne, with whom she was living, were engaged in extensive drug trafficking, i.e., distribution of large quantities of methamphetamine. If one considers both the plea colloquy and the Presentence Investigation Report, the record also clearly demonstrates that Defendant and her mother and Defendant and Materne *used* numerous firearms to facilitate their drug trafficking business. The Presentence Investigation Report reflects that numerous confidential informants provided information relating to Defendant Wainuskis' and Materne's drug trafficking and also reported that they had numerous guns. It is reasonable to conclude that these confidential informants could not have observed these guns if these guns had not been displayed and in view during a drug trafficking crime. Particularly is this conclusion reasonable in view of Defendant Wainuskis' plea of guilty and her admission that she and Materne "used" the guns to "protect" their drugs. The Supreme Court in *Bailey* stated that display of a weapon during a drug transaction is one example of "use" of a firearm during a drug trafficking crime as prohibited by § 924(c). Furthermore, the arresting agent reported that two guns were on display within arm's reach of Materne at the time of his arrest. One was located on a bar stool. Materne displayed these two guns and under the teachings of *Bailey* by displaying them he "used" the firearms as prohibited by § 924(c). One who aids and abets another in the commission of a crime is guilty as a principal. Wainuskis admitted that she and Materne together sold drugs and used guns to protect their drugs. Wainuskis was not indicted for "carrying" or "using" any specific gun during a drug trafficking crime. When Materne was arrested and found to be in arm's reach of these two firearms he was at the place where the drug transactions took place and where drugs were found.

The Fifth Circuit in *United States v. Rivas* 85 F.3d 193 (1996), held that since "*Bailey* did not address the 'carrying' requirement, prior precedent analyzing that prong was "not affected." 85 F.3d at 195, (quoting *United States v. Farris,* 77 F.3d 391, 395 n. 4 (11th Cir.1996)). In *United States v. Joseph,* 892 F.2d 118 (D.C.Cir.1989), the Court concluded that "carrying" a weapon under § 924(c)(1) does not require "actual physical wearing or bearing a gun on one's person." 892 F.2d at 125. The Court in that case defined "carrying" a firearm under 924(c)(1) as follows:

> When a person "has a present ability to exercise dominion and control over" a firearm and further has the firearm "within easy reach" and available to protect him during his ongoing [drug trafficking] offense, *Id.,* he has rather plainly committed the act Congress intended to preclude by the passage of the statute.

892 F.2d at 126. Both Materne and Wainuskis were "carrying" firearms under the "carry" prong of 924(c) as that prong was interpreted by the Court in *Joseph.*[1]

In *U.S. v. Johnson,* 87 F.3d 133 (5th Cir. 1996) the Fifth Circuit considered the "use" prong of § 924(c) after *Bailey.* The Court in that case concluded

> Thus, for example, "reference to a firearm calculated to bring about a change in the

---

1. In *Bailey* the Supreme Court noted that storing a gun near drugs for possible use constituted "possession" but not "use" as contemplated under § 924(c). Evidence in jury trials that would merely establish that a gun was stored near drugs, therefore under *Bailey* would not support a conviction for "use" and would not likely support a conviction for "carrying" since there would not likely be testimony to how the gun was moved to the place of storage. Certainly there was no such evidence in *Bailey* or *Robinson.* Since there was no evidence indicating how the guns were placed in the trunk of the car or in the locked closet, the Court in *Bailey* did not address the "carry" prong of 924(c). However, this would not likely be true when a defendant pleads guilty. Unlike *Bailey,* if a defendant pleads guilty and admits that he stored a gun near drugs, although that would not amount to "use" under *Bailey,* it would, however, constitute "carrying." By admitting that he moved a firearm from one location to another location to store it near drugs, a defendant would have admitted guilt under the "carry" prong of 924(c). As discussed above, the *Bailey* Court did not involve a guilty plea and did not address the "carry" prong.

circumstances of a predicate offense is a 'use' just as the *silent but obvious and forceful presence of a gun on a table can be 'use.'*" · (citation omitted).

.     .     .     .     .

... A firearm serves such a purpose when it elevates the stakes involved during a defendant's arrest by apprehending law enforcement officials, such as *when the firearm is displayed* to apprehending law enforcement officers *or* when the defendant reaches for the weapon while being apprehended.

87 F.3d at 137. (Emphasis added). There is no difference in a gun being displayed on a stool and a gun being displayed on a table. Under *Johnson*, decided by the Fifth Circuit after *Bailey*, Materne and Wainuskis "used" firearms within the meaning of § 924(c).

■ Further, as has been noted Wainuskis admitted that she had "used" the weapons and that the weapons were for the purpose of "protecting" their drugs. In the opinion of this Court, *Bailey* was not intended to reach a case like this case where there is so much evidence of so many weapons (a total of 27) used in such an extensive drug enterprise where the defendants admitted that they had the guns to protect the drugs. The factual situations in *Bailey* and *Robinson* were considerably different than the factual situation in this case.

■ One of the · major concerns that this Court has had in trying to determine how this case should be resolved is a concern as to what information the Court should consider in reaching its decision. In considering this § 2255 motion is the Court limited to the information revealed at the plea colloquy or can the Court consider all information which is of record and which was known to the Court before sentence was imposed and judgment entered? Specifically, are facts established by the Presentence Investigation Report to be considered in deciding this motion?

There is no question but that the plea colloquy in this case established a factual basis for Wainuskis' guilt under the "use" prong of § 924(c) under precedent that was controlling at the time her plea was taken.

*United States v. Willis*, 6 F.3d 257 (5th Cir. 1993). There is a legitimate issue as to whether the plea colloquy by itself established "use" after *Bailey*. However, since the "carry" prong of § 924(c) was unaffected by *Bailey*, this Court is of the opinion that the plea colloquy alone established a factual basis for guilt under the "carry" prong of § 924(c) as interpreted in *Joseph, supra. See also, United States v. Blankenship*, 923 F.2d 1110, 1116 (5th Cir.1991), *cert. denied*, 500 U.S. 954, 111 S.Ct. 2262, 114 L.Ed.2d 714; and *United States v. Feliz–Cordero*, 859 F.2d 250, 253 (2nd Cir.1988).

Nevertheless, in order to make a complete record in the event this matter is appealed, and to conserve judicial resources, this Court will also consider whether or not it is appropriate for the Court to consider the facts established by the Presentence Investigation Report in determining if there is a sufficient factual basis to establish guilt under the "use" prong of § 924(c) as well as under the "carry" prong. Since Defendant Wainuskis' plea was taken under Rule 11 of Fed.R.Crim. P., the Court must look to that rule to determine what evidence in the record may be considered. There are three provisions of Rule 11 that apply to this Court's analysis of how that rule relates to Defendant's motion. First, Rule 11(e) provides, "the attorney for the government and the attorney for the defendant ... may engage in discussions *with a view toward reaching an agreement....* The court shall not participate in any such discussions." (emphasis added). This Rule further provides that as a result of such an agreement the government may move for dismissal of other charges. The Court may accept the plea agreement or the Court may reject the plea agreement. If the Court rejects the plea agreement, then the defendant must be afforded an opportunity to withdraw the plea.

■ Secondly, Rule 11(f) provides that "notwithstanding the acceptance of a plea of guilty, the court *should not enter a judgment* upon such plea without making such *inquiry as shall satisfy it* that there is a factual basis for the plea." (emphasis added). In determining what information this court may consider it is important to determine when the

court must have sufficient information to satisfy itself that there is a "factual basis for the plea." The rule itself provides that answer. The court "should not enter a judgment," until the court is satisfied that there is a "factual basis for the plea." It follows that the court must have information to satisfy itself of the factual basis for the plea *before judgment is entered.* Thirdly, Rule 11(h) relates to Harmless Error and provides that "any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."

The Fifth Circuit Court of Appeals was presented with almost this identical question in the case of *United States v. Gulledge,* 491 F.2d 679 (5th Cir.1974), *cert. denied,* 419 U.S. 849, 95 S.Ct. 89, 42 L.Ed.2d 80. In that case the Court of Appeals determined that the plea colloquy did not establish a sufficient factual basis for the pleas of the defendants under prior Fifth Circuit precedent. Nevertheless, at sentencing the court did develop an adequate record to establish a factual basis for the pleas of the defendants. The defendants subsequently moved to withdraw their pleas and the trial court denied their motion. On appeal the Fifth Circuit concluded that even though the procedure at the time of the acceptance of the guilty pleas might have failed to comply with Rule 11, that nevertheless,

> The record shows ... that prior to entering judgment, the court satisfied itself as to the factual basis for the plea by an acceptable method in compliance with Rule 11.
>
> Rule 11 provides that "the court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

*Id.* at 679. The Fifth Circuit affirmed the trial court's consideration of information which the court received at the sentence hearing and which had not been received by the court at the time the plea was entered. That is the same situation that confronts this Court.[2]

2. In deciding whether this Court should consider the Presentence Investigation Report in ruling on this § 2255 motion, the Court reviewed the Comments of the Advisory Committee as to Rule 11 and read numerous cases. At first reading, the Court was concerned with language in the case of *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). However, there are numerous distinctions between both the holding and facts of that case and the holding and facts of this case. *McCarthy* was decided before the Harmless Error Amendment was added to Rule 11. *McCarthy* involved a direct appeal, not a collateral attack under § 2255. McCarthy pled guilty after trial had commenced. The plea colloquy with Wainuskis was more extensive than the brief plea colloquy that took place in *McCarthy.* Although the Court in *McCarthy* stated that the trial Court should have determined the factual basis during the plea colloquy, this conclusion was reached because the *McCarthy* court held that it was necessary to develop the factual basis at the time of the plea before it could be said that the defendant entered a knowing and voluntary plea. *McCarthy* involved a conviction under the Internal Revenue Service Code for tax evasion. In that case at the time of sentence the defendant moved to withdraw his plea of guilty for the reason that he misunderstood what he was pleading to. He stated that he only plead guilty because he understood *that he was guilty even if his actions were merely negligent and inadvertent and that he did not understand that he could be guilty only if his actions were wilful and intentional.* He was 65 years of age and in "poor health" because he had a "serious drinking" problem. Defendant contended that he would not have plead guilty if he had known that the elements of the crime to which he plead required wilful and intentional conduct rather than inadvertent and negligent conduct. It was against this factual backdrop that the Supreme Court concluded that the trial judge in that case should have developed the factual basis at the time the plea was taken. It was the reasoning of the *McCarthy* court that because the factual basis was not developed on the record at the time the plea was taken, that the record did not reflect that the defendant entered a voluntary and knowing plea of guilty. Again, *McCarthy* involved a direct appeal and not a collateral attack. The Court concludes

> It is therefore, not too much to require that *before sentencing* defendants to years of imprisonment, district judges take the few minutes necessary to *inform them of their rights and to determine whether they understand the action they are taking:*

394 U.S. at 472 and 472–74, 89 S.Ct. at 1174 and 1174–75, 22 L.Ed.2d at 428 and 429. (emphasis added).

Because of the distinctions pointed out, this Court has concluded that *McCarthy does not* prohibit consideration of the Presentence Investigation Report under the facts of this particular case. It should also be pointed out that the conclusions reached by some courts that seem to indicate that the factual basis must be developed at the time the plea is taken are in reality based upon the fact that the judges took into consideration facts not in the record. The real basis for

The Advisory Committee Notes to the 1974 .amendments to Rule 11 contain the following in regard to paragraph (f):

> Subdivision (f) retains the requirement of old Rule 11 that the court should not enter judgment upon a plea of guilty without making such an inquiry as will satisfy it that there is a factual basis for the plea. The *draft does not specify that any particular type of inquiry be made. See Santobello v. New York,* 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971); "Fed.Rule Crim.Pro. 11 governing pleas in federal courts, now makes clear that the sentencing judge must develop, on the record, this factual basis for the plea, as, for example, by having the accused describe the conduct that gave rise to the charge." *An inquiry might be made* of the defendant, of the attorneys for the government, and the defense, *of the presentence report,* when one is available, *or by whatever means is appropriate in a specific case.* (Emphasis added).

Based on the foregoing, this Court concludes that it should consider all information received by the Court before the Court entered judgment. Defendant entered her plea of guilty on September 21, 1994. She was sentenced on May 9, 1995, and the Judgment In A Criminal Case as to Defendant Wainuskis was entered by this Court on May 17, 1995. The Court received and reviewed the Presentence Investigation Report prior to sentencing Defendant Wainuskis and prior to signing and entering the Judgment against Wainuskis. Defendant was asked if she had any objection to the Presentence Investigation Report. She did not. In the interest of finality and substantive justice, and since the Court had the report in hand and had reviewed the report before the Defendant was sentenced and before the judgment was signed and entered and since Defendant did not object to the report, the information contained in the Presentence Investigation Report should be considered by this Court in ruling on this motion.

In 1979 the Supreme Court in a unanimous decision underscored the importance of finality in criminal cases involving collateral attacks on guilty pleas. *See, United States v. Timmreck,* 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979). The Court in *Timmreck* stated:

> *The concern with finality* served by the limitation on collateral attack *has special force with respect to convictions based on guilty pleas.* "Every inroad on the concept of finality undermines confidence in the integrity of our procedures; ... Moreover, the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea."

441 U.S. at 784, 99 S.Ct. at 2088. The Court in *Timmreck* concluded that a collateral attack of a sentence, received by virtue of a guilty plea, under § 2255 will not be successful unless it amounts to "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *Id.* The *Timmreck* Court's strong wording together with its clear distinction between a collateral attack with respect to a conviction based on a guilty plea as contrasted with a direct appeal of a conviction by trial provides strong support for this Court's consideration of all evidence available to it including the Presentence Investigation Report on a § 2255 collateral attack of the guilty plea in this case.

Considering all evidence before the Court at the time of sentencing and before judgment was entered including the Presentence Investigation Report will not result in a "miscarriage of justice" to Defendant Wainuskis and it certainly comports with the "rudimentary demands of fair procedure." This report merely provided the information to support Defendant's plea of guilty. Defendant was given an opportunity to challenge the accuracy of the report and she did not do so. Taking the plea colloquy and the Presentence Investigation Report together, this Court concludes that the record reflects more than

---

those decisions is not that the court considered evidence received after the plea colloquy, but that such evidence considered by the courts was

never placed of record. The Presentence Investigation Report in this case is a part of the record.

an adequate factual basis to establish guilt under the "use" prong as well as under the "carry" prong.

Before concluding, it is appropriate to discuss the fact that defendant is seeking to set aside by collateral attack a sentence which she received by virtue of her own deliberate choice to plead guilty. Plea bargaining has always been a part of the criminal justice system. However, prior to the 1975 amendments to Rule 11, plea bargaining was somewhat covert. The 1975 amendments to Rule 11 specifically recognized that plea bargaining is appropriate and necessary. Even before the 1975 amendment, the Supreme Court specifically recognized that " 'plea bargaining' is an essential component of the administration of justice." *Santobello v. New York,* 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971).

In order to understand why a plea bargain was in Defendant Wainuskis' best interest it is necessary to determine her exposure under all four counts of the indictment that implicated Defendant Wainuskis and in accordance with the facts which she admitted either at her plea colloquy or which she admitted when she did not object to the Presentence Investigation Report. The drugs seized and attributable to Wainuskis on the night she was arrested consisted of 664.9 grams of methamphetamine. Under the guidelines possession of 400 to 700 grams of methamphetamine with intent to distribute results in an offense level of 28. Wainuskis according to the record would have been entitled to a three point reduction for acceptance of responsibility and she would have been subject to a two level enhancement under guidelines § 2D1.1(b)(1) resulting in an offense level of 27. She had a criminal history category of III. Consequently, taking into consideration only the drugs which were seized on the night of her arrest, under the guidelines Wainuskis was exposed to a sentence of from 87 to 108 months in the penitentiary.

The indictment charged Wainuskis with conspiracy to possess drugs with intent to distribute from August 1991 through July 1993, a period of exactly two years. However Wainuskis indicated that because of her California arrest, she did not deal drugs for some six and one-half months. The record likewise reveals that Wainuskis sold "from several ounces to one to two pounds" of methamphetamine monthly to one customer alone during this time period. Consequently, if the Court had determined that Wainuskis dealt as much as one pound of methamphetamine on a monthly basis during the seventeen and one-half months that she acknowledged that she was dealing drugs, this would have equated to 7.9 kilograms of methamphetamine. The record clearly justifies such a finding. Possession of three to ten kilograms of methamphetamine with intent to distribute results in a base offense level of 34. If this were reduced three levels for acceptance of responsibility and enhanced two levels for possession of a weapon it would result in a total offense level of 33. A total offense level of 33 with a criminal history category of III would require a prison sentence of between 168 months to 210 months.

Count IV, the other count to which Defendant pled, according to the Presentence Investigation Report called for a total offense level of 26. With a total offense level of 26 and a criminal history category of III the sentencing range for Wainuskis was 78 to 97 months. This Court departed downward from level 26 to level 16 with a sentencing range of 27 to 33 months. Wainuskis was sentenced to the mandatory five year term as to Count III which she now seeks to vacate plus 30 months for Count IV making a total sentence of 90 months. This Court would not have made such a substantial downward departure if the Court had known that Count III would subsequently be modified or changed by the Supreme Court contrary to previous controlling precedent.

In *United States v. Kuhl,* 816 F.Supp. 623 (S.D.Calif.1993) the Court held:

> Plea bargains are contractual in nature and are therefore measured by contract law. "[T]he negotiated plea represents a bargained-for quid pro quo." ... Under a plea agreement, a defendant receives the benefit of a favorable sentence that he otherwise might not have received.

816 F.Supp. at 627. No court has held that one who pleads guilty to certain counts of an indictment in exchange for which the government moves to dismiss the other counts of the indictment has forfeited a right to make a collateral attack on the sentence as to the counts to which the defendant plead guilty. Neither does this Court reach such a conclusion. However, the above was pointed out to establish the fact that there is nothing inherently unfair, and certainly there is no fundamental miscarriage of justice under any perspective that one views this case. Because of the dismissal of two counts of her indictment as agreed to in her Memorandum of Understanding with the Government, and because of the downward departure, Defendant Wainuskis received a very lenient sentence for the crimes which she acknowledged she had committed. The 90 month sentence that she received was within the guideline range for conviction under Count II alone. It was within the guideline range for Count IV alone, and it was less than one-half of the guideline range as to Count I as to which she admitted guilt but was not required to plead.

If the law had changed (as it did under *Bailey*) and Wainuskis was serving a longer sentence than provided by law after the change, based on the crimes she committed and admitted, failure to grant petitioner relief would probably be a fundamental miscarriage of justice, but that is not the situation in this case. This case does not involve a person serving time for a crime she did not commit. Neither does this case involve one serving a longer sentence than she should be serving for crimes she committed and acknowledged.

Section 2255 provides that if a judgment was rendered contrary to law that the court shall vacate and set the judgment aside and shall either (1) discharge the prisoner, (2) resentence him, (3) grant a new trial, or (4) correct the sentence *as may appear appropriate.* (emphasis added). Since this Court has determined that the record establishes a factual basis for Defendant's guilt and has declined to vacate her sentence as to Count III, this Court does not reach the question of whether or not Defendant's sentence should be enhanced under Section 2D1.1(b)(1) or if the Court should reconsider its downward departure. However, in the case of *United States v. Castillo,* 77 F.3d 1480 at 1499, fn. 34, the Fifth Circuit determined that *Bailey* did not preclude an enhancement under 2D1.1(b)(1) "moreover the Supreme Court took great pains in *Bailey* to limit its holding to the construction of the term 'use' as that term is employed in 18 U.S.C. § 924(c)(1)."

*Merritt v. U.S.,* 930 F.Supp. 1109 (E.D.N.C.1996), involved a case in which the specific issue before the Court was whether or not the Court could resentence a defendant after the Court had vacated a gun count sentence under *Bailey.* The Court held that its "inherent authority" allowed it to modify defendant's sentence after one count is vacated. The North Carolina Court cited *United States v. Garcia,* 956 F.2d 41, 45 (4th Cir. 1992) which held, "[t]he § 2255 remedy is broad and flexible, and entrusts the courts the power to fashion an appropriate remedy. *Andrews v. United States,* 373 U.S. 334, 339, 83 S.Ct. 1236, 1239, 10 L.Ed.2d 383 (1963)." *Merritt,* 930 F.Supp. at 1114. That Court also quoted *United States v. Pimienta–Redondo,* 874 F.2d 9, 14 (1st Cir.1989), cert. denied, 493 U.S. 890, 110 S.Ct. 233, 107 L.Ed.2d 185 (1989), for an explanation of the "sentence package" rule as follows:

> [W]hen a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan. When the conviction on one or more of the component counts is vacated, common sense dictates that the judge should be free to review the efficacy of what remains in light of the original plan, and to reconstruct the sentencing architecture upon remand, within applicable constitutional and statutory limits, if that appears necessary in order to ensure that the punishment still fits both the crime and the criminal. ...

*Merritt,* 930 F.Supp. at 1114. The Court went on to say that "[i]n order to ensure that the sentence 'still fits both the crime and the criminal,'" (citation omitted) *"resentencing must occur." Id.* (emphasis added). The Court concluded

"Where the defendant challenges one of several interdependent sentences (or underlying convictions) he has, in effect, challenged the entire sentencing plan.... Consequently, he can have no legitimate expectation of finality in any discrete portion of the sentencing package after a partially successful appeal. *Pimienta–Redondo,* 874 F.2d at 16 (quoting *United States v. Shue,* 825 F.2d 1111, 1115 (7th Cir.), *cert. denied,* 484 U.S. 956, 108 S.Ct. 351, 98 L.Ed.2d 376 (1987)).

*Id.* at 1115.

In conclusion the Court holds that the plea colloquy taken in this case by itself establishes that Defendant Wainuskis by virtue of the gun that was found within her reach and by virtue of aiding and abetting co-defendant Materne who had guns within his reach violated the "carry" prong of § 924(c). Considering both the plea colloquy and the Presentence Investigation Report the evidence clearly establishes that Defendant Wainuskis violated the "use" prong of 924(c) as well.

The only way Defendant Wainuskis would be entitled to relief even as to the "use" prong of § 924 would be to exclude from the Court's consideration the Presentence Investigation Report. Such an exclusion would favor technical form over substance. Dean Roscoe Pound warned against this in 1906.[3] Dean Pound warned against the judiciary creating exceptions and qualifications and provisos to substantive law, observing that when that was done "the legal system becomes cumbersome and unworkable." *Id.* at 398. In pointing out deficiencies in the judicial system in 1906, he noted that "the inquiry is not, What do substantive law and justice require? Instead, the inquiry is, Have the rules of the game been carried strictly." He stated, "our sporting theory of justice awards new trials, or reverses judgments, or sustains demurrals in the interest of regular play." *Id.* at 406. He criticized "uncertainty, delay and expense, and above all, the injustice of deciding cases upon points of practice, which are the mere etiquette of justice...." He observed that "too much of the current dis-

satisfaction has a just origin in our judicial organization and procedure." *Id.* at 416. He concluded by hopefully looking to the future and saying, "We may look forward confidently to deliverance from the sporting theory of justice; we may look forward to a near future when our courts will be *swift and certain* agents of justice, whose decisions will be acquiesced in and respected by all." *Id.* at 417. (emphasis added). Unfortunately Dean Pounds' prophesy has not come to fulfillment. He quoted from many earlier criticisms of the judicial system and observed that King James I had reminded his judges that " 'the law was founded upon reason, and that he and others had reason as well as the judges.' " (citation omitted). *Id.* at 395.

This Court finds that "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. Consequently, no hearing will be scheduled herein. Defendant's Motion to Vacate, Set Aside or Correct Sentence is hereby denied.

---

**3.** Pound, Roscoe, *The Causes of Popular Dissatisfaction with the Administration of Justice,* 29 ABA Ann.Rep. 395 (1906).