IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 93-8291

---

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

JOHN DEREK O'BRIEN,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Western District of Texas

---

(March 24, 1994)

Before HIGGINBOTHAM and WIENER, Circuit Judges, and KAUFMAN,[*]
District Judge.

HIGGINBOTHAM, Circuit Judge:

We conclude that John O'Brien's postconviction community
service did not justify a downward departure and remand for
resentencing.

I.

John O'Brien pled guilty in 1990 to charges of conspiracy and
possession with intent to distribute more than fifty marijuana
plants. 21 U.S.C. §§ 841(a)(1) & 846. The probation officer,
based on O'Brien's offense level of 22 and criminal history
category of I, calculated a Guideline sentence of 41 to 51 months
imprisonment, to be followed by three to five years' supervised

---

[*]District Judge of the District of Maryland, sitting by
designation.

release on both of the counts to which O'Brien pled guilty. The district judge granted a two-level reduction in the offense level for acceptance of responsibility, lowering the prison term recommended by the Guidelines to 33 to 41 months.

At O'Brien's 1990 sentencing hearing, the district judge departed downward from the Guidelines range, imposing a sentence of 12 months imprisonment and five years of supervised release. The judge offered two reasons: that O'Brien had strong ties to the community of Austin, Texas, including associations with charitable groups in the Austin area, and that O'Brien was "basically a worthwhile person." United States v. O'Brien, 950 F.2d 969, 970-71 (5th Cir. 1991), cert. denied, ___ U.S. ___, 113 S. Ct. 64 (1992).

O'Brien appealed his conviction, advancing a Fourth Amendment challenge to the trial judge's denial of a motion to suppress. The government appealed the downward departure. This court affirmed O'Brien's conviction and vacated O'Brien's sentence, holding that "the reasons proffered by the district judge were insufficient to justify a downward departure." O'Brien, 950 F.2d at 970. See also United States v. Pace, 955 F.2d 270 (5th Cir. 1992).

On remand for resentencing in March of 1993, the trial judge departed downward even further. Again faced with a Guidelines range of 33 to 41 months imprisonment, the judge imposed five years of probation and no term of imprisonment. The judge's first rationale was the extent of the defendant's community service since conviction, which included musical performances worldwide, organizing benefit shows for various social service and charitable

2

organizations, and working in a music program in the Austin public schools. The judge's second rationale was the "clearly atypical" nature of the defendant's conduct. The government appeals the judge's downward departure decision.

## II.

The district court erred in departing downward because of O'Brien's post-conviction community service. O'Brien engaged in the type of community service that he did because of the skills he developed as a professional musician. When writing the Guidelines, the Sentencing Commission considered the effect on sentencing of a defendant's professional skills and professional record using them. See U.S.S.G. § 5H1.2 (educational and vocational skills not ordinarily relevant in determining whether a sentence should be outside the guidelines); § 5H1.5 (employment record not ordinarily relevant in determining whether a sentence should be outside the guidelines).[1] The Commission's consideration of these factors means they were not a permissible ground for departure. 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0.

O'Brien argues that his case does not involve a subjective guess about his future behavior because he has established a solid record of achievement in the time since his conviction. We reject

---

[1]To avoid any ex post facto problem with the application of the Guidelines version in effect at O'Brien's resentencing, we rely on the version in effect at the time of his offense. See United States v. Clark, 8 F.3d 839, 844 (D.C. Cir. 1993). We note that effective November 1, 1991 the Guidelines provide that "civic, charitable, or public service . . . good works are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.11.

this argument.  A departure decision based on evidence about a defendant's character, whether it relates to his character before or after conviction, still tries to predict the defendant's future behavior based upon his past actions.  Such assessments of a defendant's character are inconsistent with the Guidelines.  See, e.g., O'Brien, 950 F.2d at 971 n.1; United States v. Lara-Velasquez, 919 F.2d 946, 954 (5th Cir. 1990) (no downward departure for rehabilitative potential); O'Brien, 950 F.2d at 971; United States v. Reed, 882 F.2d 147, 151 (5th Cir. 1989) (no downward departure because of a defendant's "worth" or "good").  See generally Lara-Velasquez, 919 F.2d at 954; United States v. Mejia-Orosco, 867 F.2d 216, 218 (5th Cir.), cert. denied, 492 U.S. 924 (1989) (both noting Congress's goal in enacting the Guidelines of ending sentencing based on subjective predictions about a defendant's rehabilitative potential).

O'Brien argues that even if the Commission addressed the type of behavior in which he engaged, it did not anticipate the extent of his behavior.  See 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0.  We find nothing in this case taking it out of the "`heartland' . . . of typical cases embodying the conduct that [the] guideline describes."  U.S.S.G. ch. 1 pt. A § 4(b), at 1.6 (Introduction).  O'Brien has talent and the respect of many people, but so do many professionals who come before the courts for sentencing.  We see no way to take O'Brien's case out of the "heartland" without drawing subtle distinctions between the way O'Brien used his musical skills and the way other professionals subject to sentencing have employed

4

their talents.  The Guidelines do not envision this kind of subjective decisionmaking.

## III.

The district court also justified its departure because it viewed O'Brien's criminal activity as "clearly atypical."  In an introductory section of the Guidelines entitled "Probation and Split Sentences," the Commission states that it "has not dealt with single acts of aberrant behavior that still may justify probation at higher offense levels through departures." U.S.S.G. Ch. 1, Pt. A, intro. cmt. 4(d).  This court has stated that "aberrant behavior" requires more than an act which is merely a first offense or "out of character" for the defendant, as the Guidelines take those considerations into account in calculating the defendant's criminal history category. United States v. Williams, 974 F.2d 25, 26 (5th Cir. 1992).  Aberrant behavior "generally contemplates a spontaneous and seemingly thoughtless act rather than one which was the result of substantial planning because an act which occurs suddenly and is not the result of a continued reflective process is one for which the defendant may be arguably less accountable." Id. at 26-27 (quoting United States v. Carey, 895 F.2d 318, 325 (7th Cir. 1990)).

O'Brien's conduct in this case does not qualify as a "spontaneous and seemingly thoughtless" act.  Law enforcement officers several times witnessed O'Brien at a barn containing 796 growing marijuana plants and on the day they executed the search warrant O'Brien was found on the property with a key to the

5

entrance gate. A search of O'Brien's residence uncovered ledgers, accounts, receipts, and $5,665 in cash.

O'Brien draws unpersuasive analogies to two cases from other circuits. Unlike the defendant in United States v. Russell, 870 F.2d 18 (1st Cir. 1989), and one of the defendants in United States v. Takai, 941 F.2d 738 (9th Cir. 1991), O'Brien did not withdraw from his criminal activity until arrested. And unlike the other defendant found to have engaged in aberrant conduct in Takai, O'Brien maintained ongoing contact with the enterprise and its operations. Cf. Takai, 941 F.2d at 743.

IV.

The parties brief the question whether we should reassign this case to a different judge on remand. Mindful of the fact that this case has appeared before us twice, we remand to the same judge. "The district judge will, we are confident, perform his duty. It is unseemly for us to either assume that he will take a particular course or to suggest what he should do so long as he reaches his decision in accordance with the controlling statute." United States v. Denson, 603 F.2d 1143, 1149 (5th Cir. 1979). There is much to be said for according district judges the power exercised in this case. Many critics of the sentencing guidelines would prefer to do so. But we have no choice but to apply the law as directed by the Congress.

VACATED AND REMANDED