Revised May 11, 1999

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 98-60181

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

TERRY LYNN WINTERS,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Mississippi

April 23, 1999

Before GARWOOD, BARKSDALE and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Winters was convicted of violations of 18 U.S.C. § 242 (depriving an individual of his civil rights under color of law), 18 U.S.C. § 924(c) (use of a firearm during and in relation to a crime), and 18 U.S.C. § 1503 (obstruction of justice). The district court departed downward from the United States Sentencing Guidelines at sentencing. The government appealed. This court held that the district court abused its discretion in sentencing Winters, vacated the sentence, and remanded for re-sentencing. The district court again departed downward from the guidelines, this time listing different reasons for departure. The government again appeals the sentence. For the reasons stated herein,

we vacate the sentence and remand for resentencing.

## Factual Background and Procedural History

This appeal revisits the sentence of Terry Lynn Winters (Winters), which this court first reviewed in *United States v. Winters*, 105 F.3d 200 (5th Cir. 1997). Winters was a correctional officer at the Mississippi State Penitentiary at Parchman, Mississippi (Parchman). At the time of his arrest, Winters had worked for Parchman for fifteen years.

In November 1991, inmate Larry Floyd escaped from Parchman in a stolen vehicle. Floyd wrecked the vehicle and sustained injuries which left blood around the vehicle. The following day Floyd was captured at an abandoned house. Several officers beat Floyd after he was handcuffed despite the absence of resistance on his part. The officers then placed Floyd in a truck for return to the prison. During the trip, Winters squatted over Floyd and hit him several times forcefully on the head with his service revolver knocking him unconscious. A small artery in Floyd's head was severed by the head blows resulting in profuse bleeding. The Parchman staff physician testified that the wound on Floyd's head was consistent with "the type of wound that might result from a blow by a gun barrel."

A federal grand jury investigated the incident. The grand jury subpoenaed Robert McKnight to testify. McKnight was also a Parchman officer who had also participated in the capture and beating of Floyd. Winters was McKnight's superior officer. The night before McKnight was to testify, Winters and another officer visited McKnight and pressured him to testify falsely.

The grand jury indicted Winters and four others for various federal offenses. Winters was convicted of deprivation of a person's civil rights under color of law (18 U.S.C. § 242), use of a firearm during and in relation to a crime (18 U.S.C. § 924(c)), and obstruction of justice (18 U.S.C.

2

§ 1503).

Under the United States Sentencing Guidelines, (USSG or guidelines), a violation of 18 U.S.C. § 924(c) (use of a firearm during a crime) carries a mandatory minimum sentence of sixty months' imprisonment. Winters faced an additional 108 - 135 months' imprisonment for the convictions under 18 U.S.C. § 242 (deprivation of civil rights) and 18 U.S.C. § 1503 (obstruction of justice). The guidelines also required a fine ranging from $20,000 - $200,000, two to three years of supervised release, and a $150 special assessment.

The court departed downward from the guidelines. The court sentenced Winters to the mandatory sixty months for the firearms charge. The sixty months would be served consecutively with an additional twelve months for each of the other two convictions (to be served concurrently). Thereafter Winters was sentenced to three years supervised release, a $2000 fine and a $150 special assessment.

The government appealed Winters' sentence. As a preliminary matter, this court had to determine on what grounds the district court based the departure. The government argued that the district court based its decision on three grounds, and asked this court to declare each reason an improper basis for departure. Those grounds were: (1) that Winters' act was a "single act of aberrant behavior;" (2) Winters' distinguished record of service as a correctional officer; and (3) an institutional norm that a prisoner who escaped would be beaten upon recapture. A panel of this court disagreed with the government's interpretation of the sentencing colloquy. It found that the district court justified its departure on the sole ground that Winters' act was a single act of aberrant behavior, which was inconsistent with his prior service and high virtues. *See Winters*, 105 F.3d at 206.

The panel found that the district court's interpretation of Winters' actions was unsupported

by the record. *See id.* at 207 ("A single act of aberrant behavior can be an appropriate basis for a downward departure. . . . However, such a single act is not implicated by Winter's conduct."). Therefore this court vacated Winters' sentence and remanded for re-sentencing.

In February 1998, the district court again notified the government that it would depart from the guidelines. This time, the district court listed its grounds as (1) a "Correctional Officer's High Susceptibility to Abuse in Prison" and (2) the "Mandatory and Consecutive 5-year Term of Imprisonment on Count 5 [the gun charge] results in an Excessive Term of Imprisonment." The government timely objected to the departure. Based on the aforementioned grounds for departure, the district court sentenced Winters to the same sentence as before. The government again appeals Winters' sentence.

## Discussion

The government raises three issues in this appeal. First, the government contends that the district court abused its discretion by departing downward on the basis that Winters faces a mandatory 60 month term for the gun charge. Next, the government explains that the district court abused its discretion when it offered Winters's status as a correctional officer as basis for a downward departure. Finally, the government urges this court to reassign this case to a different judge.

A.     Abuse of Discretion

This court reviews a district court's departure from the sentencing guidelines for abuse of discretion. *See Koon v. United States,* 116 S.Ct. at 2035. "[W]hether a factor is a permissible basis for departure under any circumstances is a question of law and the court of appeals need not defer to the district court's resolution of that point." *See Koon*, 116 S.Ct. at 2047. However, this review

4

is still included under the abuse of discretion standard. *See id.* ("A district court by definition abuses its discretion when it makes an error of law.").

A district court's determination whether to depart from the guidelines is entitled to substantial deference, "for it embodies the traditional exercise of discretion by a sentencing court." *See Winters*, 105 F.3d at 204. This is due primarily to the particular competence of trial courts in determining whether a particular case is ordinary or unusual, as compared to the vast majority of other cases.[1] *See id.*, *discussing Koon*, 116 S.Ct. at 2047.

However, a district court cannot depart from the guidelines unless it first finds, on the record, that facts or circumstances of a case remove that case from the "heartland" of typical cases encompassed within the guideline. *See Winters*, 105 F.3d at 205; *United States v. Harrington*, 82 F.3d 83 (5th Cir. 1996) (court must articulate acceptable reasons for departure on the record and departure must be reasonable).

The Guidelines Manual explains that it intends each guideline to create a heartland of typical cases. *See* Guidelines, ch.1, pt. A. *See also Koon*, 116 S.Ct. at 2044. A court should not depart from the guidelines unless it finds that conduct in a particular case "significantly differs from the

---

[1]The dissent chides the majority for failing to give substantial deference to the district court judge who presided over the trial and has "extensive judicial service and experience, especially in matters regarding the penitentiary." The dissent's emphasis on the trial judge's experience amounts to the proverbial red herring. The vast experience and legal acumen of the district judge is beyond dispute and nothing in the majority's opinion suggests otherwise.

We simply part company with the dissent's notion that a district judge's sentencing decisions are virtually impervious from appellate review. Substantial deference has never been synonymous with carte blanche approval of a sentencing judgment in the face of legal error. Indeed, when reviewing the basis for a downward departure, our function as a court of appeals would be rendered superfluous if "substantial deference" operated as a talisman designed to ward off the scrutiny of this court.

norm," and takes the case outside this heartland. *Id.* Put another way, a sentencing court may depart "if it finds 'unusual circumstances' that render the guideline level attached to a specific factor insufficient." *See United States v. Caldwell,* 985 F.2d 763 (5th Cir. 1993), *citing* USSG § 5K2.0, 18 U.S.C. § 3533(b).

Additionally, the guidelines either forbid, discourage, or encourage several factors as bases for departure. *See id; See* USSG § 5H1. Forbidden factors, such as race, sex, and national origin, may never be considered by a sentencing court. *See* § USSG 5H1.10. Discouraged factors, including employment records and family ties, are considered "not ordinarily relevant" and may only be considered "in exceptional cases." *See* USSG § 5H1.5, ch.5, pt. H; *Koon*, 116 S.Ct. at 2045.

Alternatively, a sentencing court may depart from the guidelines if "it finds an aggravating or mitigating circumstance that was not adequately taken into consideration by the Sentencing Commission in formulating the sentencing guidelines." *See id.* To determine whether a circumstance was adequately considered by the Commission, courts may "consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." *United States v. Koon*, 116 S.Ct. 2035, 2044 (1996), *quoting* 18 U.S.C. § 3553(b).

1.      Mandatory 60 Month Gun Charge As Basis for Departure

The district court determined that in light of the mandatory sixty month sentence required for the gun charge, following the guidelines on the other charges would impose too harsh a sentence. Therefore, the district court departed downward from the guidelines on the sentences for the civil rights and obstruction of justice charges.

No permissible basis for departure was provided by the gun charge. In *United States v. Caldwell*, this court considered whether the fact that a defendant faced a mandatory minimum

6

sentence for the use of a firearm during a crime, pursuant to 18 U.S.C. § 924(c), could justify a downward departure from the guidelines for the underlying crime. *See United States v. Caldwell*, 985 F.2d 763, 764-65 (5th Cir. 1993). It cannot.

The defendant in *Caldwell* had been caught exchanging drugs in a hotel room, where law enforcement officers found a gun. *See Caldwell*, 985 F.2d at 764. Caldwell pleaded guilty to a drug offense and to the use of a firearm in the commission of that crime (pursuant to 18 U.S.C. § 924(c)). *See id.* The district court noted that the gun charge carried a mandatory minimum sentence of sixty months' imprisonment. *See id.* The district court determined that, because the gun played only a minimal role in the crime, following the guidelines on the drug offense would result in an unduly harsh sentence. *See id.* Since the court was not able to depart downward on the gun charge, the court departed downward from the guidelines on the underlying drug offense. *See id.*

This court reversed. *See id.* at 765. The guidelines permit departure only where a mitigating or aggravating factor is not adequately taken into consideration by the guidelines themselves. *See id.* In the case of a § 924(c) charge, however, "the guidelines do consider the interplay of § 924(c) and themselves." *See id.* As we previously explained, the guidelines specifically control the sentencing of defendants convicted under § 924(c) *and* the underlying offense. *See id.* *See also* USSG § 2K2.4 (limiting additional offense-specific enhancement for use or possession of a weapon where a defendant has also been sentenced under § 924(c)). Furthermore, the guidelines anticipate that the underlying offense level will already be reduced when there is a separate gun charge because the underlying offense-level will not include any applicable weapons enhancement.[2] Accordingly, the

---

[2]*See id.*, Application Note 4.
> "Where there is also a conviction for the underlying offense, a consolidated fine guideline is determined by the offense level that

7

defendant in *Caldwell* had not been sentenced to an additional weapon enhancement for his underlying drug offense.

The Sentencing Commission thoroughly considered the interplay of the mandatory minimum sentence for use of a firearm with the sentence guidelines for the underlying crimes. The guidelines prohibit a court from departing from the guidelines based on a factor that the Sentencing Commission considered in formulating the guidelines. *See Caldwell*, 985 F.2d at 765. Therefore, this court held as a matter of law that a mandatory minimum sentence under 924(c) cannot justify a downward departure for the underlying offense. *See id.*

Under *Caldwell*, therefore, the mere fact that Winters faced a sixty-month minimum sentence on the gun charge cannot by itself justify a departure from the guidelines. Thus, the district court's departure was allowable only if unusual circumstances remove this case from the heartland of cases contemplated by the guidelines.

The district court determined that this is an unusual case for which the guidelines are inadequate. First, the court noted that Winters lawfully possessed his weapon. *See id.* The court recognized that Winters' lawful possession of the gun was not sufficient grounds for departure, but stated that it added to the totality of the circumstances calling for departure. *Id.* at 28. Second, the court recognized the fact that Winters' was a law enforcement officer, and noted his service record. "Let me inject this. If ever there has been an unusual case under the guidelines it is that this 15-year

---

would have applied to the underlying offense absent a conviction 18 U.S.C. § 844(h), § 924(c), or § 929(a). This is required because the offense level for the underlying offense may be reduced when there is also a conviction under 18 U.S.C. § 844(h), § 924(c), or § 929(a) in that any specific offense characteristic for possession, use, or discharge of a firearm is not applied. . . . "

8

veteran of law enforcement with the Department of Corrections who, the evidence shows, had an unblemished record and who exhibited this type of behavior." *See id.* at 29.

A district court's determination of what is a usual or unusual case is entitled to substantial deference. *See Koon*, 116 S.Ct. 2035. However, the district court offered no facts which differentiate this case from any other case in which a law enforcement officer uses excessive force or obstructs justice.

Instead, the district court found this case extraordinary primarily because of Winters' personal characteristics. Personal traits such as those relied upon by the district court are not proper bases for departures from the guidelines. *See Winters*, 105 F.3d at 206. *See also United States v. O'Brien,* 18 F.3d 301, 303 (5th Cir. 1994) (holding that departure based on assessment of defendant's good character is inconsistent with guidelines); *Harrington*, 82 F.3d at 88 (recognizing that a defendant's personal characteristics are not usually acceptable grounds for departure).

For example, Winters' status as a correctional officer and his fifteen year service history do not provide proper grounds for departure. Employment status and records of civic or public service are discouraged factors under the guidelines, and can therefore be grounds for departure only in exceptional cases. *See* USSG § 5H1.5, 11. The fact that Winters' worked for the prison system for fifteen years surely does not by itself take Winters out of the "heartland" of officers normally convicted of violating an inmates' civil rights. *See also United States v. Rybicki*, 96 F.3d 754, 758 (4th Cir. 1996) (Vietnam Veteran with 20 years military service and responsibilities to mentally ill wife and sick son did not present "exceptional" case).

Furthermore, Winters' status as a correctional officer is closer to an aggravating factor rather than a mitigating one. *See Winters*, 105 F.3d at 207. Winters' status as a corrections officer

9

necessarily meant that the criminal conduct - which took place in his capacity as a corrections officer - constituted an abuse of a public position. The guidelines specifically state that crimes involving the abuse of public trust may be considered aggravating - not mitigating - factors. *See id., citing* USSG § 3B1.3. *See also Winters*, 105 F.3d at 207 ("[T]he Commission considered criminal acts committed by government agents to require a firmer response in order to prevent them.").

The guidelines also discourage departures based on family ties and responsibilities. *See* USSG § 5H1.6. Accordingly, courts should only depart from the guidelines on these bases in rare or exceptional cases. *See id.* There is no evidence that Winters' family will suffer any more than any family suffers when one member is sentenced to prison. *See Harrington*, 82 F.3d at 89; *United States v. Kapitzke*, 130 F.3d 820 (8th Cir. 1997) ("[T]he disintegration of existing family life or relationships . . . is to be expected when a family member engages in criminal activity that results in a period of incarceration."), *citing United States v. Canoy*, 38 F.3d 893, 907 (7th Cir. 1994). Thus, Winters' family ties do not present a valid basis for departure.

The district court held that all these factors should be taken into consideration together, to take them outside the heartland of the guidelines. Indeed, the district court seems to have felt that the severe punishment required by the guidelines in this case didn't fit the crime. *See R.E.* Tab 6 p.257 ("The facts in this case do not warrant a sentence within the applicable guideline's range for counts 4 and 9 PLUS an additional 5-year mandatory and consecutive term of imprisonment on count 5."). The Sentencing Commission recognized that such a case might occur, where several otherwise-insufficient factors combined to justify a departure. *See* Commentary accompanying § 5K2.0. However, the Commission stated such cases would be "extremely rare."

This is not such an extremely rare case.  Moreover, the district court has not articulated "relevant facts and valid reasons" demonstrating why this case is extraordinary or even unusual in comparison to other cases under the guideline.  *See Winters*, 105 F.3d at 208.  Once again "the district court's reasoning fails to cite the compelling facts necessary to satisfy the very high standard for this type of departure from the Guidelines."  *See id.*  Therefore, the district abused its discretion in departing from the guidelines.

2.      Status as Correctional Officer as Basis for Departure

The district court's second basis for departure was the fact that Winter's status as a corrections officer makes him highly susceptible to abuse in prison.  Winters had been an officer in Mississippi prisons for over fifteen years when the incident occurred.  During that time, the district court reasoned, he had met many prisoners.  Some of these prisoners would now likely be in federal prison.  Those prisoners would know that Winters had been a corrections officer.  The district court determined that this circumstance justified a departure based on Winters's apparent high susceptibility to abuse by other prisoners.

In *Koon*, the United States Supreme Court held that the district court properly considered the defendants' particular susceptibility to abuse in prison as a basis for a downward departure.  *See id.*  However, *Koon* was an extreme case and no facts remotely similar to it are present here.  *Koon* involved the sentencing of the Los Angeles Police Department officers convicted of beating Rodney King.  The district court found that the "extraordinary notoriety and national media coverage of this case, coupled with the defendants' status as po lice officers, make Koon and Powell unusually susceptible to abuse in prison."  *See Koon,* 116 S.Ct. at 2053.

11

Any attempt to compare this case to the Rodney King incident is unavailing. A few stories in a local or state-wide newspaper cannot compare to the national outrage emanating from the beating of Rodney King, not to mention the subsequent riots. The notorious circumstances involved in *Koon* and the identity of the officers involved received such sustained national media coverage as to permeate prison facilities nationally. There is no record evidence to show that the instant event was reported beyond the local area of its occurrence. Winters argues that this case is unique because he was a corrections officer accused of beating an inmate. However, his situation is not outside the heartland of cases in which a law enforcement officer is accused of using excessive force or violating a person's civil rights under color of law.

*Koon* does not create a general rule that a defendant's status as a police officer can justify a downward departure. In *United States v. Rybicki*, 96 F.3d 754 (4th Cir. 1996) the Fourth Circuit considered whether a defendant's status as a law enforcement officer can, by itself, justify a downward departure based on "disproportionate problems" suffered by incarcerated police officers. *See Rybicki*, 96 F.3d at 758. That court determined that allowing such a general rule suggests that "law enforcement officers, as a class, are entitled to more favorable treatment under the Sentencing Guidelines." *See id.* The court found no indication that either Congress or the Sentencing Commission intended to treat law enforcement officers more favorably than other defendants. *See id.* Therefore, the Fourth Circuit held that a defendant's mere status as a law enforcement officer cannot justify a downward departure. *See id.*

Like *Rybicki*, the district court offered no compelling reasons why Winters is any more susceptible to abuse in prison than any other corrections officer sentenced to prison. *Compare United States v. Long,* 977 F.2d 1264, 1278 (8th Cir. 1992) (allowing departure where defendant's frail

12

health left him "exceedingly vulnerable to possible victimization and resultant severe and possibly fatal injuries.") *with United States v. Russell*, 156 F.3d 687, 694 (6th Cir. 1998) (defendant's deafness did not leave him vulnerable to attack as in *Long*). Instead, the court determined that Winters' mere status as an officer justified the departure.

To allow a departure on the basis that Winters is a law enforcement officer would thwart the purpose and intent of the guidelines. *See United States v. Kapitzke*, 130 F.3d at 822 (allowing departure because child pornographers were susceptible to abuse in prison would thwart the guidelines' sentences for such crimes). The Sentencing Commission surely considered the possibility that some defendants convicted of violating a persons civil rights *under color of law* would be law enforcement officers. As noted earlier, the Commission applied *greater* not lesser sentences for such crimes. Therefore the district court abused its discretion when it departed downward from the guidelines simply because Winters was a law enforcement officer.

Having rejected the district court reasons for a downward departure as expressed in its notice of intent to depart downward, we turn our attention to the dissent's rejection of our methodology. First, the dissent emphasizes that the district court made its determination based on the totality of the circumstances. Indeed, the dissent recites the phrase "totality of the circumstances" as some mantra which if stated frequently enough will supplant even the district court's written basis for a departure. Despite the apparent wishes of the dissent, the "totality of the circumstances" is not simply a paradigm which renders the district court's basis for a downward departure insulated from review of the elements which make up the totality.

A "total" is nothing more than the sum of its component parts. Here, those parts include, *inter alia*, Winters's subjection to a mandatory minimum of five years and his susceptibility to abuse

13

in prison. Again, these are the two reasons articulated in the district court's notice of intention to consider a downward departure. Individually, neither offers a basis for a downward departure. It is axiomatic that combined they do not offer a basis for departure. Similarly, we find that any derivative from the articulated bases does not offer a basis for departure.[3]

The dissent's reliance on our recent decision in *United States v. Threadgill*, 1999 WL 212251 (5th Cir. April 13, 1999) is mistaken. In *Threadgill*, the district court articulated two factors which removed this case from the heartland. There, as in the case at bar, the majority accorded substantial deference to the factual determinations of the district court; nevertheless, the majority offered an assessment of the substantive bases for the departure. Based on its analysis, the majority found that *Threadgill* "was certainly not a case where the district court disregarded an applicable Guidelines range in favor of another it preferred." *Id.* at * 18. Here, the applicable guideline range required a sentence of 108-135 months of imprisonment for violation of 18 U.S.C. § 242 and 1503, to which

___

[3]For example, the dissent highlights the reasons the district court found Winters susceptible to abuse. We reject the same because all relate to Winters status as a correctional officer and nothing in the record indicates that Winters is unique among other inmates who were formerly correctional officers or police officers. The dissent's attempt to minimize the effect of the Federal Bureau of Prisons letter confirming that it is fully capable of housing Winters exposes the futility of its argument.

The dissent hypothesizes that the Federal Bureau of Prisons could have produced a similar letter in *Koon* yet the Supreme Court found that susceptibility to abuse should be considered. Nothing in *Koon* indicates the existence of any such letter; therefore, it is equally plausible that no letter existed. Yet, we need not engage in such conjecture regarding the facts in *Koon* because there is little doubt that the facts surrounding the violation of Rodney King's civil rights received far greater exposure than Winters's violation of Larry Floyd's. In fact, despite the dissent's emphasis on the publicity surrounding this case, nothing in the record bears upon the nature and extent of any such publicity.

Furthermore, while the publicity in *Koon* introduced a measure of complexity in safely housing the defendants in any federal facility, the relative paucity of publicity in this case precludes us from finding a comparative measure of complexity. Winters spent 15 years working in a penitentiary in Mississippi and was imprisoned in Minnesota. By emphasizing Winter's status as a corrections officer, the dissent impermissibly lowers the bar for corrections officers.

the mandatory consecutive 60 months imprisonment for the firearms violations under 18 U.S.C. §

924(c) would have been added. *See Winters,* 105 F.3d at 206. While we do not concern ourselves

with the extent of the departure, the record indicates that the district court has failed to articulate a

plausible basis for departure. In so doing, the district court impermissibly sentenced Winters to its

"preferred" sentence of 12 months for a second time.

B.      Reassignment to a Different Judge

Finally, the government urges this court to reassign this case to a different district judge on

remand. A federal court of appeals has the supervisory authority to reassign a case to a different trial

judge on remand. *See Johnson v. Sawyer*, 120 F.3d 1307 (5th Cir. 1997); 28 U.S.C. § 2106.

However, this is an extraordinary power and should rarely be invoked. *See id.* Such reassignments

"should be made infrequently and with the greatest reluctance." *In re Corrugated Container*

*Antitrust Litigation: Adams Extract Co. v. Green Pay Packaging*, 752 F.2d 137 (5th Cir. 1985)

(quoting *Koeller v. Richardson-Merrel*, 737 F.2d 1038, 1067 (D.C. Cir. 1984) (Richey, J.,

concurring)).

This Circuit has not decided which of two tests should be used to decide whether to reassign

a case. *See Johnson*, 120 F.3d at 1333. Several circuits will reassign a case to avoid bias or the

appearance of bias. *See id.* The Ninth and Tenth Circuits, however, have adopted a more formal test,

which requires the court to consider three factors:

> (1) whether the original judge would reasonably be expected upon remand to
> have substantial difficulty in putting out of his or her mind previously-expressed views
> or findings determined to be erroneous or based on evidence that must be rejected,
> (2) whether reassignment is advisable to preserve the appearance of justice, and (3)
> whether reassignment would entail waste and duplication out of proportion to any
> gain in preserving the appearance of fairness. *Johnson*, 120 F.3d at 1333, *citing Davis*
> *& Cox v. Summa Corp.,* 751 F.2d 1507, 1523 (9th Cir. 1985) (quoting *United States*

*v. Robin*, 553 F.2d, 10 (2d Cir. 1997).

*See also United States v. White*, 846 F.2d 678, 695-96 (suggesting three-prong test should be used where there is no direct evidence of bias).

This case does not call for reassignment under either test. No showing has been made that we are presented with a case of bias or antagonism toward one party in the case. *Contra, Johnson*, 120 F.3d 1307 (reassigning case where lower court made repeated antagonistic remarks and admitted hostility towards IRS). Although the district court twice chose to depart downward from Winters' sentence, it made no indication that it would refuse to impartially weigh evidence and decide the matters before it objectively.

Moreover, the fact that this court has already reversed the district court does not necessarily require reassignment. In *United States v. O'Brien*, this court faced a procedurally similar situation. *See O'Brien*, 18 F.3d at 302. There, the district court had imposed a sentence which this Court later vacated. *See id.* Upon remand, the district court again imposed an improper sentence. *See id.* On the second appeal, one of the parties urged this court to reassign the case. *See id.* at 303-304. This Court refused to do so. "The district judge will, we are confident, perform his duty. It is unseemly for us to either assume that he will take a particular course or to suggest what he should do so long as he reaches a decision in accordance with the controlling statutes." *See id.*, *quoting United States v. Denson*, 603 F.2d 1143, 1149 (5th Cir. 1979). *See also United States v. Schoenhoff*, 919 F.2d 936 (5th Cir. 1990) ("We refuse to transfer an action for re-sentencing solely because two prior sentences imposed by the trial court have been reversed."). We decline the government's invitation to reassign this case.

16

## Conclusion

For the reasons stated herein, we VACATE Winter's sentence and REMAND to the district court for re-sentencing.

RHESA HAWKINS BARKSDALE, Circuit Judge, dissenting.


A district court is entrusted with discretion to determine which cases present extraordinary circumstances warranting a downward departure from the Sentencing Guidelines. Accordingly, we are required to give substantial deference to such decisions. Because the majority has failed to do so, and, in addition, has misread the reasons given at resentencing for the downward departure, I respectfully dissent.

To set the stage, three parameters bear noting: first, the district judge, in making a downward departure, is, as noted, entitled to "substantial deference"; second, the district judge based the departure on the *totality of the circumstances* created by the firearms count *and* the susceptibility to abuse in prison factors, rather then treating them separately, as the majority does erroneously; and third, only the departure, *not* its extent, is at issue.

In this regard, a very recent decision by our court summarizes nicely, in the light of *Koon v. United States*, 518 U.S. 81 (1996), the framework for reviewing downward departures:

> [O]ur analysis of a district court's decision to depart consists of three separate determinations. An appellate court must ask: (1) whether the factors relied on by the district court for departure are permissible factors under the Guidelines; (2) whether the departure factors, as supported by evidence in

18

the record, remove the case from the heartland of the applicable guideline; and (3) whether the degree of departure is reasonable.

*United States v. Threadgill*, 1999 WL 212251, *13 (5th Cir. 1999). For our purposes here, the Supreme Court has already decided that departures based on susceptibility to abuse in prison are permissible, as discussed *infra*; and, as noted, the Government does not challenge the extent of the departure. Therefore, at issue is only the "heartland" question.[4]

Concerning that question, the Supreme Court in *Koon*, decided after the first sentencing in this case, addressed, among other things, the district court's decision to depart downward based on the enormous publicity and outrage surrounding that case. The Court recognized the superior position of district courts in

---

[4]The majority misconstrues *Threadgill* in part, by relying on *Threadgill's* statement that it "was certainly not a case where the district court disregarded an applicable Guidelines range in favor of another it preferred". Maj. Opn. at 14 (quoting *Threadgill*, 1999 WL 212251 at *18). Then, although recognizing that the *extent* of the departure is not at issue here, the majority concludes that "the district court impermissibly sentenced Winters to its 'preferred' sentence of 12 months". Maj. Opn. at 15. True, the quoted statement from *Threadgill* in part concerned the second inquiry on review: whether the case is outside the heartland. But, it also concerned the third inquiry on review: whether the *extent* of the departure was reasonable. *Threadgill*, 1999 WL 212251 at *18, *22 n.16. Again, we are concerned only with the second inquiry — the heartland question. And, it is in this regard that the majority's treatment of *Threadgill* is most troubling, by failing to address *Threadgill*'s discussion of the standards to be applied in making the first two inquiries (whether the factors were permissible and whether the facts take the case out of the heartland).

- 19 -

determining whether, for sentencing purposes, a case was "typical":

> Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline. *To resolve this question, the district court must make a refined assessment of the many facts bearing on the outcome*, informed by its vantage point and day-to-day experience in criminal sentencing. Whether a given factor is present to a degree not adequately considered by the Commission, or whether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way, are matters determined in large part by comparison with the facts of other Guidelines cases. *District courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see many more Guidelines cases than appellate courts do. In 1994, for example, 93.9% of Guidelines cases were not appealed. To ignore the district court's special competence – about the "ordinariness" or "unusualness" of a particular case – would risk depriving the Sentencing Commission of an important source of information, namely, the reactions of the trial judge to the fact-specific circumstances of the case.*

*Id.* at 98 (internal citations and quotations omitted) (emphasis added).

This passage from *Koon* reveals two errors in the majority's reasoning. First, the majority states that there are two permitted bases for a downward departure: if the conduct is outside the heartland of typical cases; and "*[a]lternatively*, ... if '[the sentencing court] finds an aggravating or mitigating circumstance that was not adequately taken into consideration by the Sentencing

Commission in formulating the sentencing guidelines'", quoting **Koon**, 518 U.S. at 81 (emphasis added).  Maj. Opn. at 5-6.  As I read the Guidelines and **Koon**, these are not alternative permitted downward departure bases.  Rather, the departure is permitted if the factors in the case take it outside the "heartland"; that results when the circumstances are so unusual that they were not taken into consideration by the Sentencing Commission.  *See **id.*** at 94 (Guidelines "apply to a heartland of typical cases.  Atypical cases were not 'adequately taken into consideration,' and factors that make a case atypical provide potential bases for departure"); *see also **United States v. Rivera***, 994 F.2d 942, 947 (1st Cir. 1993) (a case that is outside the heartland of a guideline "is, by definition, an 'unusual case'").  This clarification is important because, in the final analysis, the district court's reason for the downward departure at issue resulted from it finding the sentencing considerations outside the heartland.  It came to this conclusion because *the unique, total circumstances of this case* had not been taken into consideration by the Commission.

Second, the above-quoted passage from **Koon** notes the substantial deference that appellate courts must accord such departure decisions.[5]  As our court stated quite recently:

---

[5]In addition to worrying that a red herring (the district judge's expertise) has been dragged over the heartland issue, the majority fears that my construction of the substantial discretion standard would render downward departure decisions "virtually

- 21 -

> ***Koon*** thus teaches that when a district court decides to depart based on the particular facts of a case, it is acting within its special competence. Accordingly, *it is the near-exclusive province of the district court to decide whether a particular factor, or set of factors, removes a case from the applicable heartland. We must accord those decisions the greatest deference.*

***Threadgill***, 1999 WL 212251 at *16 (emphasis added) (internal citations omitted).

As discussed more thoroughly *infra*, the district judge went to great lengths to explain why he thought this case is so unusual. In addition to insight gained from having presided over the trial, the district judge's reasons were grounded in his extensive judicial service and experience, especially with matters involving the penitentiary, in that he has handled litigation concerning it for more than 15 years.

But, in spite of the district judge's unique position to find this case outside the heartland, the majority dismisses his reasoning, stating that Winters' "situation is not outside the heartland of cases in which a law enforcement officer is accused of

---

impervious from appellate review", and cautions that this standard is not "designed to ward off the scrutiny of this court". Maj. Opn. at 5 n.1. Obviously, the substantial discretion standard is not intended to have that effect. On the other hand, I simply recognize, and (unlike the majority) am faithful to, the narrow standard of review that has been mandated. ***Threadgill***, 1999 WL 212251, *16 ("it is the *near-exclusive province* of the district court to decide whether a particular factor, or set of factors, removes a case from the applicable heartland" (emphasis added)). Rather than apply this standard, the majority substitutes its judgment for that of the district court.

- 22 -

using excessive force or violating a person's civil rights under color of law". Maj. Opn. at 11. In so doing, the majority cites no authority for this proposition, and ignores the district judge's vast and unique experience in applying the Guidelines in this instance.

Furthermore, the majority compounds the error by parsing the judge's reasoning and erroneously addressing each of his rationales separately. In contrast, the district judge's statements at resentencing demonstrate that he considered all the circumstances together, in their totality, in concluding that the case was outside the heartland. The majority addresses the two reasons the district court gave in its "Notice of Intent to Depart" (the mandatory firearm sentence and the *Koon* susceptibility to abuse factor) as if our court must decide whether either alone would support the district judge's decision. This treatment misconstrues that judge's reasoning and undermines the substantial deference owed him in such circumstances.

First, the majority rejects the mandatory five-year consecutive sentence under the 18 U.S.C. §924(c) firearms conviction as a basis for departure, stating that "[n]o permissible basis for departure was provided by the gun charge". Maj. Opn. at 6. *The district judge agreed with this;* the firearms sentence was

*not* the basis for his departure.[6]  Instead, the district judge correctly considered the interplay of the mandatory five-year firearms sentence with the other circumstances in considering the totality of the circumstances that warranted a departure.  He made clear that he was *not* departing solely because of the mandatory firearms sentence and that he understood the import of **United States v. Caldwell**, 985 F.2d 763 (5th Cir. 1993).

In **Caldwell**, the defendant was convicted under § 924(c) and for underlying drug offenses.  The district court departed downward because the gun did not have an "integral role" in the offense and because of the defendant's minimal participation in the crime.  **Caldwell**, 985 F.2d at 765.  Our court reversed, concluding that the case did not present "unusual circumstances" justifying a departure.  *Id.* at 766.  That conclusion was based on finding that the Sentencing Commission had taken into account the interplay between § 924(c) and the underlying drug offense.  *Id.*

The interplay between § 924(c) and the underlying civil rights offense in this case has also been taken into consideration by the Commission.  Winters' base offense level for the underlying civil rights offense was not enhanced for the use of the firearm, because

---

[6]At resentencing, the district judge did not dispute that § 924(c) applied to Winters.  *See, e.g.,* **United States v. Contreras**, 950 F.2d 232, 241 (5th Cir. 1991), *cert. denied*, 504 U.S. 941 (1992) (§ 924(c) applies to police officers who commit crimes using their firearm).

- 24 -

that use was taken into account for the § 924(c) sentence. *See* U.S.S.G. § 2H1.4(a)(1994 ed.) (court to apply greater of offense level 10 or 6 plus offense level of underlying offense for § 242 convictions); U.S.S.G. § 2A2.2(b)(2)(B) (guideline for aggravated assault – the underlying offense in this case – that provides a 4 level increase for use of a firearm); U.S.S.G. § 2K2.4 (underlying offense should not be enhanced for use of a firearm when defendant is also convicted under § 924(c)).

The district judge understood this. This interplay is reflected in the Presentence Report; there was no firearms enhancement to the base offense level for the civil rights conviction. But, the district judge recognized that other considerations came into play that, in his view, took this case outside the heartland:

> The facts [concerning Winters and those in *Caldwell*] are very distinguishable. *Caldwell* [did not involve] a law enforcement officer. *Caldwell* [concerned] a drug dealer arrested in a motel room and [he] had a gun within the useful area, I guess you could say. I'm not persuaded that *Caldwell* can be analogized to the case against Mr. Winters. *And I say it for this reason.* Mr. Winters legitimately had this weapon on him. He was out on a mission to recapture an escaped prisoner. He didn't shoot the victim with the gun. But he did, the evidence shows, strike him over the head with this gun. I simply meant to point out in my downward departure reasons, reason No. 2 [in the notice — the weapons count], that here we don't have someone who was illegally in possession, carrying or using a firearm. *The illegal use of it, though[,] was the striking*

> *on the head.  And while that alone perhaps is
> not a sufficient ground for downward
> departure, I mention it in conjunction with my
> first ground [in the notice – susceptibility
> to abuse in prison] because the overall
> totality of the circumstances in this case
> call for a downward departure.*

(Emphasis added.)

The district judge was within his discretion in concluding that the Sentencing Commission had not anticipated such unusual facts.  Addressing this, the district judge stated:

> Now, as a correctional officer searching for
> an escaped prisoner, ... Winters legitimately
> possessed a firearm during that search.  And
> following the capture of the escaped inmate,
> Mr. Winters used this firearm for an illegal
> purpose, to strike the victim on the head.
> The defendant did not use the firearm within
> its designed purpose, but used the weapon as a
> club to strike the victim.  It is likely this
> defendant did not give any thought to what he
> used to hit the victim with, and used this
> firearm to strike the victim because it
> happened to be in his hand at the time he
> chose to use illegal force against the victim.
> It is also likely that Mr. Winters would have
> used another item, such as a walkie-talkie,
> which one of the guards did use against this
> victim, a baton or something of that nature[,]
> if that item, instead of a firearm, had been
> in his hand when he chose to strike the
> victim.

Moreover, I do not read **Caldwell** as preventing district courts from ever *considering* the mandatory firearms sentence as one of the factors in the decision to depart downward.  Although the district court may not depart *solely* on that basis, the district judge made it clear that this was merely one consideration of many.

- 26 -

Finally, *Caldwell* does not hold that, after a district court has decided to depart downward based on a legitimate reason, it cannot consider the firearms sentence in deciding the *extent* of the departure. The Guidelines' range for the civil rights and obstruction of justice convictions was 108-135 months (9-11.25 years), to be followed by the mandatory consecutive five years for the firearms count, totaling approximately 15 years. Instead, the district court departed downward to one year for the first two convictions, resulting in six years imprisonment. At resentencing, conceding that an approximate 15-years sentence was "too severe", the Government stated that, if the district court would depart downward only 50% from the 108-135 months range, it would not appeal the sentence.

Had the district court done so, the sentence for the underlying offenses would be between 4.5 to 5.63 years, which, with the consecutive mandatory five years, would have resulted in an approximate 10-years sentence. In short, it appeared that the Government wanted Winters to serve approximately 10 years. This supports the Government's unspoken recognition that, in the light of the circumstances in this case, imprisonment of greater than approximately 10 years is outside the heartland. (Again, the extent of the departure is not at issue.)

Perhaps the majority is concerned that allowing the district court to consider the five-year mandatory sentence as a factor

would undermine the purpose of § 924(c). However, this and other courts have considered the impact of the five-year mandatory sentence in allowing departures in other circumstances.[7] For example, a district court may consider the effect of a § 924(c) sentence in departing downward for substantial assistance. *See* *United States v. Alvarez*, 51 F.3d 36, 39 (5th Cir. 1995) (district court may impose sentence below statutory minimum on Government's motion to reflect substantial assistance); *United States v.*

---

[7]Two other cases were found in this circuit where the district court departed downward where a § 924(c) sentence was involved. In *United States v. Wainuskis*, 942 F. Supp. 1101 (S.D. Miss. 1996), in which the defendant pleaded guilty to a § 924(c) violation and underlying offenses, the district court departed downward from a range of 78 to 97 months and imposed a 30-month sentence to run consecutively with the § 924(c) five-year sentence. Later, due to a change in the interpretation for the term "use" of a firearm, as employed in § 924(c), *see* *Bailey v. United States*, 516 U.S. 137 (1995), the defendant challenged her plea to the § 924(c) charge. The district court noted that it "would not have made such a substantial downward departure if [it] had known that [§ 924(c)] would subsequently be modified or changed by the Supreme Court contrary to previous controlling precedent". *Id.* at 1109. This demonstrates that the district court considered the impact of the mandatory sentence in deciding the extent of his departure for the underlying offense sentence.

Section 924(c) also provides for a mandatory 30-year term of imprisonment for the use of certain types of firearms. In *United States v. Branch*, 91 F.3d 699, 738 (5th Cir. 1996), *cert. denied*, 520 U.S. 1185 (1997), one of the defendants was convicted under this provision, but the district court departed downward to 10 years imprisonment, rather than imposing the *mandatory* 30-year sentence required by the statute. The Government did not appeal the departure.

***Schaffer***, 110 F.3d 530, 532-33 (8th Cir. 1997).

Further, allowing this departure will not undermine the purpose of § 924(c). Congress' intent was, *inter alia*, that defendants convicted under § 924(c) spend a minimum of five years in prison. *See **United States v. Singleton***, 16 F.3d 1419, 1426 (5th Cir. 1994) (Congress' concern in enacting 1984 amendments to § 924(c) was in providing for a minimum mandatory sentence for use of a firearm in certain crimes). That purpose is more than satisfied by the six-year sentence imposed by the district court.[8]

Moreover, neither § 924(c) nor the case law of this circuit state that a district court may *never* consider the impact of a five-year mandatory sentence. ***Caldwell*** states that district courts may not depart based *solely* on this criterion, but that is not the situation here.

Even if I am incorrect in my reading of ***Caldwell,*** and it is (as the majority appears to conclude) inappropriate to *ever* consider the impact of the mandatory firearms sentence, I would still affirm the sentence based on the other factors highlighted by the district judge, including the susceptibility to abuse in

---

[8]Section 924(c)'s mandatory sentence provision was also intended to deter the use of firearms in the commission of crimes. ***United States v. Correa-Ventura***, 6 F.3d 1070, 1083-84 (5th Cir. 1993). In this case, the deterrent value of the mandatory sentence is preserved; the district court sentenced Winters to five years for the firearms conviction to be served consecutively with one year for the § 242 conviction.

prison. As the Supreme Court has stated: "A sentence thus can be 'reasonable' even if some of the reasons given by the district court to justify the departure from the presumptive guideline range are invalid, provided that the remaining reasons are sufficient to justify the magnitude of the departure." *Williams v. United States*, 503 U.S. 193, 204 (1992). Here, the totality of the circumstances, even disregarding the mandatory sentence, justifies our according the requisite deference to the district judge and affirming the departure.

In this regard, the majority states that the district judge's "*second basis for departure* was the fact that Winters' status as a corrections officer makes him highly susceptible to abuse in prison". Maj. Opn. at 11 (emphasis added). Again, this was not a "second", separate, or alternative basis; instead, it was simply part of the totality of the circumstances found to mandate downward departure.

In *Koon*, the Court stated that the crimes committed by the police officers in beating a suspect, "were by definition the same for purposes of sentencing law as those of any other police officers convicted under 18 U.S.C. § 242 of using unreasonable force in arresting a suspect". *Koon*, 518 U.S. at 112. However, the Court relied on the videotape of the crime, the publicity, and

- 30 -

the public outrage in affirming the downward departure.  *Id.*

The district judge carefully considered *Koon*'s applicability:

> And as I recall in *United States v. Koon*, the defendant in *Koon* is to be distinguished from Mr. Winters.  Koon was a police officer, a law enforcement officer out working with the public.  On the other hand, in this particular case, Mr. Winters was a Lieutenant working in corrections in a state prison.  He has had day-to-day contact with prisoners, presumably throughout the course of his 15-year career with the Mississippi Department of Corrections.  We know that a substantial number of prisoners who began doing time in the state system eventually filter into the federal system.  And it's logical to assume than even though, certainly Mr. Winters' case did not receive the notoriety and publicity connected with the *Koon* case, nonetheless it received a great deal of notoriety in ... the state of Mississippi through the media because an indictment resulted from the recapture of an inmate who was maliciously assaulted by Mr. Winters, who struck the inmate with a firearm while the inmate was on the back of a ... truck being taken, as I recall, perhaps to the hospital already because he had been struck by a walkie-talkie by someone earlier while being transported back to the penitentiary.

Thus, based on the district court's close consideration of Winters' susceptibility to abuse in prison, combined with its consideration of the unique facts of this case and the effect of the mandatory firearm sentence, the district court departed downward.

The majority rejects this reasoning, stating that "[a] few stories in a local or state-wide newspaper cannot compare to the national outrage emanating from the beating [at issue in *Koon*], not to mention the subsequent riots".  Maj. Opn. at 11.  The majority's

reasoning effectively writes **Koon** out of the law by requiring national publicity and outrage for the susceptibility to abuse in prison exception to apply.

I do not read **Koon** to require such extensive publicity. In **Koon**, after discussing the publicity in that case, the Supreme Court stated that the determination by the district court that the defendants would be more susceptible to abuse in prison "is just the sort of determination that must be accorded deference by the appellate courts". 518 U.S. at 111. Likewise, in this case, the district judge's conclusion regarding the local and state-wide publicity should be afforded far more deference than that given by the majority.[9] As noted, the sentencing judge in this case has been involved in extensive prison litigation and is in a unique position to gauge a defendant's likelihood of abuse in prison.

The majority also cites to **United States v. Rybicki**, 96 F.3d 754 (4th Cir. 1996), and concludes erroneously that "the [district] court determined that Winters' mere status as an officer justified the departure". Maj. Opn. at 12. The district court at no time intimated that Winters deserved a departure *solely* because of his

_____

[9]In stating that there is a "relative paucity of publicity in this case", Maj. Opn. at 14 n.3, the majority erroneously substitutes its view of the facts for that of the district court. This is a factual question; the district court's determination should be accorded far more deference than the majority is willing to give. *See* **Threadgill**, 1999 WL 212251 at *15 (district court's resolution of factual questions must be "accord[ed] substantial deference").

*status* as a corrections officer.   The majority's reliance on **Rybicki** is misplaced; even the majority notes that the Fourth Circuit in that case was faced with the issue of "whether the defendant's status as a law enforcement officer can, *by itself*, justify a downward departure".   Maj. Opn. at 12 (emphasis added).

The district judge stated that he was *not* departing downward based *solely* on Winters' position as a corrections officer.[10] Instead, the judge found that a susceptibility to abuse departure was warranted because: (1) Winters was a corrections officer with daily contact with prisoners; (2) he had been a corrections officer for 15 years, increasing the amount of contact he had with prisoners; (3) the case received considerable media attention in Mississippi, where Winters was employed and the prisoners would have known about the incident; (4) prisoners in the state system

---

[10]Indeed, in addressing downward departures that were granted as a result of the defendant's status in a class of offenders frequently targeted by other prisoners (such as child pornographers), two other circuits have held that **Koon** does not allow a departure.  *See **United States v. Wilke**,* 156 F.3d 749, 753 (7th Cir. 1998) ("Mere membership in a particular class of offenders that may be susceptible to abuse in prison does not merit a departure for vulnerability to abuse in prison"); **United States v. Drew**, 131 F.3d 1269, 1271 (8th Cir. 1997) (child pornography conviction and naivete of defendant not enough to support downward departure for vulnerability to abuse); **United States v. Kapitzke**, 130 F.3d 820, 822 (8th Cir. 1997) ("Kapitzke's mere membership in a class of offenders that may be targeted by other inmates cannot make his case extraordinary").  The district court did not depart merely because of Winters' status as a member of a vulnerable class in prison (i.e., prison guards), but instead departed based on the total circumstances surrounding this case.

often enter the federal system; and (5) the crime for which Winters was convicted stemmed from his beating a prisoner. In short, it is erroneous for the majority to conclude that the district judge relied only on Winters' corrections officer status in determining that a susceptibility to abuse in prison departure was warranted.

In concluding that "the district court abused its discretion when it departed downward from the guidelines simply because Winters was a law enforcement officer", the majority states that "[t]o allow a departure on the basis that Winters is a law enforcement officer would thwart the purpose and intent of the guidelines"; and that "[t]he Sentencing Commission surely considered the possibility that some defendants convicted of violating a person's civil rights *under color of law* would be law enforcement officers. As noted earlier, the Commission applied *greater* not lesser sentences for such crimes". Maj. Opn. at 12 (emphasis in original).

Certainly, the Commission contemplated the sad fact that some persons violating another's civil rights would be law enforcement officers. But, that is *not* the issue at hand. At issue is whether the Commission contemplated that, for circumstances such as exist in this case (corrections officer struck captured escapee with pistol), that the officer would not only receive a substantial term of imprisonment (10 years) under the Guidelines for civil rights and obstruction of justice violations, greatly increasing, among

- 34 -

other things, his susceptibility to abuse in prison, *but would also receive* a consecutive five year sentence on a firearms count (even though the weapon was instead used as a club), adding to that susceptibility and otherwise increasing the sentence to approximately 15 years.[11] Based upon his vast experience and exercising his broad discretion, the district judge concluded that, under the totality of the circumstances, this situation was *not* contemplated; that the Commission never intended that a person committing such an offense would serve approximately 15 years in prison; and that, as a result, it was outside the heartland.[12]

The district court's decision is further supported by **United States v. Hemmingson**, 157 F.3d 347, 363 (5th Cir. 1998), in which

---

[11]The Government points to a letter from the Bureau of Prisons, stating that it is equipped to protect prisoners, such as Winters, that have special security needs. Presumably, the Bureau could have said the same for the defendants in **Koon**. Again, the Supreme Court affirmed the district court's susceptibility to abuse departure in that case, deferring to the judgment of the district court on such matters.

[12]*See* **Threadgill**, 1999 WL 212251 (5th Cir. 1999) (affirming downward departure in money laundering case and deferring to district court's factual determinations). *See also* **United States v. Walters**, 87 F.3d 663 (5th Cir.), *cert. denied*, 117 S. Ct. 498 (1996), where our court deferred to the district judge's determination that the defendant deserved mitigation in receiving a sentence for money laundering because he did not receive any of the stolen funds. Our court affirmed the departure because the extent of the departure was reasonable and "the sentencing guideline for money laundering and its commentary make no mention of the failure to receive a personal benefit as a mitigating factor". **Id.** at 671-72.

our court upheld a downward departure based on "the unusual facts of [the] case[,] ... Department of Justice practice, the language and structure of the guideline, and the absence of caselaw supporting the government's claim to typicality". Likewise, the district judge here considered what he, as an experienced judge, found to be the unusual factors of this case; the Court's reasoning in **Koon**, holding that atypical susceptibility to abuse in prison may warrant a downward departure; Winters' position as a correctional officer for 15 years, thus placing him in contact with countless prisoners; and the fact that Winters was convicted of beating a prisoner. While the Government asserts that this *is* a typical case (as it did unsuccessfully in **Hemmingson**), it cites no authority to show that this is a typical 18 U.S.C. § 242 prosecution.[13]

---

[13]A search of 18 U.S.C. § 242 prosecutions appealed to either our court or the Supreme Court resulting in a published opinion revealed only one case involving a prison guard accused of beating a prisoner. In **United States v. Bigham**, 812 F.2d 943 (5th Cir. 1987), prison guards beat, struck, and burned recaptured escaped prisoners after returning to the prison. There is no indication in the opinion that any of the guards struck the prisoners with a gun. The opinion does not indicate the length of the sentence imposed on any of the defendants.

Given the paucity of the reported cases involving appeals from 18 U.S.C. § 242 convictions for guards beating inmates, it is unclear how the majority reaches the conclusion that this case is a typical § 242 case. Indeed, it is because appellate courts see so few cases on appeal relative to those addressed by the district courts that we should, and must, give substantial deference to the district court in determining the typicality of a case.

Moreover, the district court's use of the totality of the circumstances is supported in a post-**Koon** case from the Tenth Circuit. In **United States v. Collins**, 122 F.3d 1297, 1302-03 (10th Cir. 1997), the court began by reviewing the impact of **Koon** on appellate review of downward departures. The court noted that **Koon** requires its most deferential review for the factual determinations by the district court. **Id.** at 1302 (citing **Koon**, 116 S. Ct. at 2046). Here, as discussed *supra*, part of the legal basis of the district court's decision was Winters' susceptibility to abuse in prison. Again, the Supreme Court has held that this may be taken into account in deciding to depart downward. Thus, as also discussed *supra*, the only determinations left for our review are the district judge's *factual findings* that Winters would be susceptible to abuse in prison, to which we must grant substantial deference (stated by **Threadgill**, as discussed *supra*, to equate with "accord[ing] those decisions the greatest deference", 1999 WL

---

Further, the lack of this type of § 242 convictions before this court undermines the majority's conclusion that the district court must be reversed because departures should be infrequent. Given the infrequency with which this court must decide appeals from these cases, departures such as the one before us can hardly be described as "frequent". Moreover, our court lacks jurisdiction to review a district court's *refusal* to depart downward unless its decision was based on a mistaken belief that it lacked authority to do so. *See, e.g., **United States v. Valencia-Gonzalez**, 1999 WL 198889, *2 (5th Cir. 1999). This further undermines the majority's conclusion that this case is not atypical, as our court can only review those cases in which a downward departure is granted, *not when it is refused*.

212251 at *16).

The *Collins* court also recognized that some factors that would not, alone, support a departure could be properly considered in conjunction with other factors to warrant a downward departure. In *Collins*, the district court departed downward based on the defendant's advanced age and infirmity and on the circumstances surrounding an almost 10-year-old conviction that resulted in a career criminal adjustment. *Collins*, 122 F.3d at 1305. In affirming, the Tenth Circuit stated that, although offender characteristics (such as age and infirmity) ordinarily should not be taken into account, they could be considered "*in combination with other circumstances of a defendant's criminal history*". *Id.* (Emphasis added.) Thus, rather than parsing the district court's reasoning (as the majority erroneously does here), the Tenth Circuit considered the reasons for departing downward in the same manner as the district court presented them – as part of the total circumstances that, *together*, removed the case from the heartland.

Recently, the Eighth Circuit rendered a decision in a similar case. In *United States v. Colbert*, 1999 WL 177300 (8th Cir. 1999), the defendant, a police officer, was convicted of violating § 242 after he beat a suspect being held in the local jail. On appeal, the defendant claimed, among other things, that the district court erred in refusing to depart downward under *Koon* because the defendant, as a police officer, would be susceptible to abuse in

prison; because the victim provoked the defendant; and because of the defendant's responsibilities to his children and fiancee.

The Eighth Circuit affirmed the decision *not* to depart.[14] *Colbert*, however, involved different facts than those present here: first, the defendant in *Colbert* did not assert that there was publicity surrounding his conviction that would increase the susceptibility to abuse in prison; and second, here, the district judge did not rely on either family responsibilities, as discussed *infra*, or the conduct of the victim in deciding to depart downward.

Interestingly, although the *Colbert* court affirmed the district court's decision not to depart downward, *Colbert* supports *affirming* the departure here. In rejecting the defendant's contentions, *Colbert* notes that *Koon* did not apply because "there was no extraordinary publicity". In contrast, here, the district

---

[14]As discussed in note 10, the rule in our court is that we generally lack jurisdiction to review a denial of a downward departure. *See, e.g., Valencia-Gonzales*, 1999 WL 198889 at *2. The Eighth Circuit follows the same rule. *See, e.g., United States v. Johnson*, 1999 WL 105100, *3 (8th Cir. 1999) ("We have jurisdiction to review the district court's discretionary decision not to depart downward from the Guidelines only if the district court acted with an unconstitutional motive or erroneously believed that it lacked the authority to consider a particular mitigating factor") (internal quotation omitted). The defendant in *Colbert* did not claim that the district court acted with an unconstitutional motive or under an erroneous belief that it could not depart downward. Nevertheless, the court did not address whether it had the authority to review the refusal-to-depart-downward claim. Instead, the court proceeded to the merits and appeared to review the district court's decision under an abuse of discretion standard.

judge found that there was significant publicity.  Further, the Eighth Circuit did not devote much discussion to analyzing the district court's decision.  Rather, after a very brief discussion of the holding in *Koon*, the court stated: "The District Court felt these differences justified it in refusing to depart downward.  We see no abuse of discretion in these determinations."  *Id.* at *2.

Thus, the Eighth Circuit did *not* parse and dissect the district court's reasoning on each of the bases the district court rejected in denying a downward departure.  Rather, the court followed the district court's lead in examining the circumstances of the case, and, in the end, *deferred to the discretion and reasoning of the district court*.  This is precisely the approach the majority has erroneously failed to follow here.

Such an approach is warranted, where the district judge carefully considered a combination of factors that lead it to find this case atypical.  By separating out each of the district court's reasons and analyzing each on its own, the majority destroys any possibility of a district court departing downward when a case presents numerous factors that, while each alone may not support a departure, make the total case atypical.[15]  The Sentencing

---

[15]The majority likens my use of "totality of the circumstances" to a "mantra".  For this review, well it should be.  Stating that "[a] 'total' is nothing more than the sum of its component parts", Maj. Opn. at 13, the majority examines *only* the parts and *never* the sum.  This is at odds with  our court's approach in *Threadgill* and *Hemingson*, where we looked at the total circumstances rather than

- 40 -

Commission did not intend for departures to be made only in those case where *one* factor made the case atypical, but not in those cases where a *combination* of factors made it so.

Finally, I disagree with the majority's conclusion that the district court considered Winters' family ties and responsibilities in departing downward. In so doing, the majority quoted from our court's opinion for the first appeal in this case, ***United States v. Winters***, 105 F.3d 200 (5th Cir. 1997). There, our court stated:

> That is not to say that, on remand, there can be no possibility of a downward departure based on family ties or responsibilities or the defendant's employment. *See **Koon***, 116 S. Ct. at 2050. (Congress did not grant courts authority to decide what sentencing considerations are inappropriate in every case.) *But the district court's reasoning fails to cite the compelling facts necessary to satisfy the very high standard for this type of departure from the Guidelines*.

105 F.3d at 208 (Emphasis added). The majority quotes the last sentence of this paragraph, Maj. Opn. at 10, but it is inapplicable in this appeal; the district judge did not, on resentencing, base his decision on Winters' family ties or responsibilities.

Instead, as discussed, the district judge looked to other factors. Because I would accord, as required, substantial deference to his findings and would affirm the sentence imposed by him, I respectfully dissent.

---

critically parsing each stated reason.