United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 5, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-60537
Summary Calendar
_____

GABRIEL BUITRON,

Petitioner-Appellant,

versus

UNITED STATES PAROLE COMMISSION,

Respondent-Appellee.

_____

Petition for Review of an Order of the
United States Parole Commission
_____

Before JONES, STEWART, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Gabriel Buitron ("Buitron") was arrested, convicted, and sentenced to 330 months

imprisonment in Mexico for aggravated homicide. Pursuant to a prisoner transfer treaty between the

United States and Mexico, Buitron was transferred to the United States to serve his foreign sentence.

After several hearings, the United States Parole Commission ("Parole Commission") ordered that

---

[*]Pursuant to 5ᵀᴴ Cɪʀ. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ Cɪʀ. R. 47.5.4.

Buitron serve 312 months of imprisonment. Buitron appeals the Parole Commission's determination. For the following reasons, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On May 31, 1997, Buitron strangled a woman to death at the Hotel Buenos Aries, Colonia Centra, Mexico. According to Buitron, he met the woman at a bar and after several drinks she offered to have sexual relations with him for five hundred pesos. Buitron obtained the five hundred pesos and checked into the Hotel Buenos Aires under a false name. Once inside, Buitron gave the woman the 500 pesos. Shortly thereafter, the woman allegedly slapped him and shouted profanities at him. In response, Buitron demanded his money back. When the woman said no, he grabbed her and strangled her to death. After the murder, Buitron left the hotel room with the five hundred pesos.

On August 17, 1997, Buitron was arrested for the victim's death. On December 5, 1997, Buitron was convicted of aggravated homicide and sentenced to twenty seven years and six months imprisonment. Pursuant to the Treaty on the Execution of Penal Sentences, Buitron was transferred to the United States to serve his sentence.[1] Following his transfer, Buitron was interviewed by a probation officer, who prepared a post-sentence investigation report. In the report, the probation officer noted that Buitron had also been convicted of intentional simple homicide in Mexico for which he was sentenced to ten years in prison, but served less than three years. The probation officer noted that Buitron committed the prior offense in the same manner as this case - he strangled a woman to death in a hotel room after drinking and socializing with her. The probation officer further noted that Buitron committed the instant offense nine months after being released from prison for the first offense. Buitron did not deny these allegations. The probation officer concluded that first degree

---

[1]Treaty on Executions of Penal Sentences, Nov. 25, 1975, 28 U.S.T. 7399, T.I.A.S. No. 8718.

murder, which carries a base level offense of 43, was most analogous to the offense charged by the Mexican authorities. Buitron objected to the characterization of his offense. The Parole Commission scheduled a hearing for June 20, 2002.

Prior to the hearing, Buitron was evaluated by a psychologist, Dr. Karen Gold ("Dr. Gold"). In a written report, Dr. Gold found "Buitron to be a man of average intelligence, with a good deal of personal insight and a recognition that alcohol and anger have been weighty problems for him throughout his adult life." Dr. Gold also found Buitron "open to learning and psychological intervention" and that he possessed "the intellectual ability to profit from past experience. Dr. Gold concluded that the "likelihood of Buitron reoffending or posing a future danger is very low."

At the Parole Commission hearing, Buitron submitted Dr. Gold's report and argued that his offense was more analogous to voluntary manslaughter, and at worst, second-degree murder. Buitron also requested a downward departure because of the torture that he allegedly received in Mexico. The hearing examiner found that Buitron's offense was most analogous to second degree murder, which resulted in an offense level of 30, and with Buitron's criminal history category of I, produced a guideline range of 97 to 121 months' imprisonment. The hearing examiner rejected Buitron's request for a downward departure, finding his torture allegation unpersuasive. Relying on U.S.S.G. §§ 4A1.3 and/or 5K2.0, the hearing examiner recommended departing above that range with a release date after service of 204 months' imprisonment. The hearing examiner found that Buitron's criminal history score did not reflect the seriousness of his criminal history and the likelihood that he would commit future crimes. The hearing examiner forwarded the recommendation to a Parole Commission attorney, who in turn recommended that Buitron's sentence be upwardly departed to the maximum sentence possible - 330 months imprisonment. The Parole Commission

adopted the attorney's recommendation. Buitron appealed the Parole Commission's sentence determination to this Court. After receiving a copy of Buitron's appellate brief, the Parole Commission granted Buitron a new hearing to consider whether the upward departure was appropriate under both §§ 4A1.3 and 5K2.0. As a result, Buitron's first appeal to this Court was dismissed as moot.

On May, 16, 2003, the Parole Commission held a second hearing. The hearing examiner recommended that the Parole Commission set Buitron's release date after 330 months of service. The hearing examiner's recommendation was reviewed by a Parole Commission attorney, who in turn recommended a release date after 312 months of service. The Parole Commission adopted the attorney's recommendation and ordered that Buitron serve 312 months of imprisonment. Buitron appeals.

### STANDARD OF REVIEW

"This Court reviews the [Parole] Commission's release determination as though it 'had been a sentence imposed by the United States district court.'" Molano-Garza v. U.S. Parole Comm'n, 965 F.2d 20, 23 (5th Cir. 1992) (quoting Hansen v. U.S. Parole Comm'n, 904 F.2d 306, 309 (5th Cir. 1990)); see also 18 U.S.C. § 4106A(b)(2)(B). We review the Parole Commission's construction of § 4106A and the sentencing guidelines de novo. Molano-Garza, 965 F.2d at 23. We review the Parole Commission's upward departure from the Sentencing Guidelines for abuse of discretion. See United States v. Winters, 174 F.3d 478, 482 (5t h Cir. 1999). A departure is not an abuse of discretion if acceptable reasons are offered for the departure and the departure is reasonable. See United States v. Lambert, 984 F.2d 658, 663 (5th Cir. 1993). When reviewing the Parole Commission's factual findings, this Court applies the clearly erroneous standard. See Molano-Garza, 965 F.2d at 23.

DISCUSSION

Pursuant to § 4A1.3, the Parole Commission departed upward to 312 months imprisonment because: 1) Buitron's prior Mexican conviction was not taken into consideration in calculating his criminal history score, and 2) it was likely that Buitron would commit serious additional criminal conduct in the future. Buitron argues that the Parole Commission's determination that he posed a likelihood of future serious criminal activity was unreasonable because it was based in large part on the hearing examiner's subjective belief that individuals who suffer from alcohol abuse pose a greater danger of recidivism. The Parole Commission retorts that its decision was reasonable because Buitron posed a high risk of recidivism. We agree with the Parole Commission.

Section 4A1.3 provides that a sentence outside the guideline range is permissible if "the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes. . . ." The introduction to chapter four of the Sentencing Guidelines provides the following statement with respect to recidivism:

> The Comprehensive Crime Control Act sets forth four purposes of sentencing. . . A defendant's record of past criminal conduct is directly relevant to those purposes. A defendant with a reco rd of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment. . .To protect the public from further crimes of the particular defendant, the likelihood of recidivism and future criminal behavior must be considered. Repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation. While empirical research has shown that other factors are correlated highly with the likelihood of recidivism, e.g., age and drug abuse, for policy reasons they were not included here at this time. The Parole Commission has made no definitive judgment as to the reliability of the existing data.

U.S.S.G., Introductory Commentary to chapter Four, at § 4.1.; see also United States v. Riggs, 967 F.2d 561, 563 (11th Cir. 1992) ("Recidivism is an integral factor in a court's determination of whether an offender's criminal history category . . . is appropriate.").

5

In determining the degree of the likelihood of recidivism, the Parole Commission heard testimony from Dr. Karen Gold, Buitron's expert, who stated that Buitron presents "a very low likelihood of reoffending if he maintains sobriety." Specifically, Dr. Gold stated that "there is a ten percent likelihood that Buitron would reoffend." The hearing examiner rejected Dr. Gold's conclusion as follows:

> I disagree with the psychologist's overall evaluation of this case as posing a low likelihood of re-offending. I disagree with this evaluation because the exception which she allows for (the subject maintaining sobriety) is too great an assumption in this case and with the subject's prior history. In fact, my personal experience in this area would suggest to me that it is more likely than not that an alcoholic addict of many years will revert to the use of alcohol when next released (as he did after the first murder) and therefore pose a very high risk to the community.

As the hearing examiner explained:

> [I have] over a quarter century of experience working with alcohol dependence individuals. It has been my experience, almost without exception, these individuals are excellent inmates and very compliant while incarcerated. However, once released, most revert to the use of alcohol and alcohol addiction, and commit new violent criminal acts while under the influence of alcohol.
>
> . . . My finding and recommendation on this matter, based on my experience in this area, is as follows: The subject has had a life long addiction to alcohol which has only stopped due to his incarceration for the murder which he is currently serving. While incarcerated, he as well as many other alcoholics, display a high degree of motivation, remorse, and self awareness. However, when released, there is a high probability that he will return to his prior alcoholic addictive behavior. When he does, he will be an extreme danger to the community as is evidenced by his prior alcoholic addictive behavior. When he does, he will be an extreme danger to the community as is evidenced by his prior conduct which involved two separate murders, both fueled by his alcohol addiction.

We reject Buitron's assertion that the hearing officer relied solely on his subjective beliefs regarding alcohol abusers in deciding whether to upwardly depart from the Guidelines. Although the hearing examiner seemingly stressed his views regarding the likelihood that a person who suffers from

6

alcohol abuse will return to abusing alcohol when released from prison, they were made in response to Dr. Gold's unpersuasive psychological assessment that Buitron had a low likelihood of reoffending. As the reviewing Parole Commission attorney pointed out, Dr. Gold's assessment was based upon a sample of only ten persons. Moreover, t he hearing examiner correctly pointed out that Buitron demonstrated a high likelihood that he would commit future serious crimes based on the similarity and recency of Buitron's current and prior homicide convictions.

In United States v. De Luna-Trujillo, this Court held that "prior similar adult criminal conduct may indicate the seriousness of the past crimes and the likelihood of future crimes. . . . The recidivist's relapse into the same criminal behavior demonstrates his lack of recognition of the gravity of his original wrong, entails greater culpability for the offense with which he is currently charged, and suggests an increased likelihood that the offense will be repeated yet again." 868 F.2d 122, 125 (5th Cir. 1989). We find De Luna-Trujillo instructive and find that the similarity of Buitron's current and prior homicide offenses - both of which involved alcohol, solicitation for sex, and strangulation - to be reflective of his likelihood to reoffend. Moreover, the fact that the instant homicide was committed just nine months after his release from prison for the first homicide supports this conclusion. As the Parole Commission stated, "the nature of Buitron's prior criminal act - a homicide committed under similar circumstances as the instant offense - is clearly the type of offense that the Sentencing Parole Commission contemplated would be a basis for a departure above the highest criminal history category for the applicable offense level."

## CONCLUSION

After carefully reviewing the briefs and record in this case, we find that the Parole Commission did not abuse its discretion in departing upward from the Sentencing Guidelines. Thus,

7

for the foregoing reasons, we AFFIRM the decision of the Parole Commission.

AFFIRM.